Weygandt, C. J.
 

 Was it prejudicially erroneous for the trial court to refuse to submit to the jury the plaintiff’s first cause of action relating to implied warranty?
 

 It is the contention of the plaintiff that this defendant impliedly warranted as reasonably fit for human consumption the water obtained from its own well and served by it to its customers. The defendant seems to place some reliance upon the fact that the well was not drilled by the defendant company but by certain of its incorporators and' stockholders who owned and operated the restaurant before the defendant corporation was organized in 1933. However, under the circumstances of this case this fact is unimportant. On the defendant’s property and in' close proximity to the well was a septic tank which the defendant maintained for the purpose of disposing of the sewage.
 

 Section 8395, G-eneral Code, reads in part as’ follows:
 

 “Subject to the provisions of this chapter and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:
 

 “1. When the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller’s skill or judgment, whether he be the grower, manufacturer or not, there is an
 
 *429
 
 implied warranty that the goods shall be reasonably fit for snch purpose.”
 

 Did the transaction between the plaintiff and the defendant constitute a “sale” or a “service”? According’ to the plaintiff it was the former, and furthermore it should be noted that the defendant wisely concurs' in this modern and liberal view. However, many authorities still adhere to the “service” theory which is based upon the early custom whereby the guest paid the innkeeper a stipulated sum and in return was furnished lodging, food and various kinds of service. It w;as said that the innkeeper “uttered his provisions.” 5 A. L. R., 1100; 35 A. L. R., 920; 50 A. L. R., 227; 63 A. L. R., 334; 98 A. L. R., 681. Such states as Massachusetts and New York have adopted the Other view as more realistic and more consistent with the changed business methods of the present. In fact it seems contrary to the simplest concept of a sale to hold that none takes place when a customer enters a restaurant and purchases a sandwich which he carries away. But if the purchaser should eat the sandwich on the premises can it logically be said that this single fact transforms the nature of the transaction from that of a sale to that of a mere service? This court thinks otherwise.
 

 However, although the parties are in agreement as to this phase of the matter, the defendant insists that the water supplied to the pláintiff was a mere gratuity and not a part of the dinner and therefore was not connected with the sale. The difficulty with this contention is the fact that in this part of the world it long has been the definitely established custom for restaurants and hotels to supply their customers' with water for drinking purposes with each meal and just as much a part thereof as salt, pepper, butter and similar articles for which no specific charge is made. In the instant case the defendant furnished the water from
 
 *430
 
 its own well and cannot be heard to complain when held to an implied warranty of the reasonable fitness of its “goods” for their intended use. It is the view of the defendant that the pronouncement of this court in the case of
 
 City of Salem
 
 v.
 
 Harding,
 
 121 Ohio St., 412, 169 N. E., 457, is decisive of this question. However, it must be noted that the court there dealt with the different problem of the liability of a municipality which furnished water for a variety of purposes.
 

 This court is therefore of the opinion that in the instant case the trial court committed prejudicial error in refusing to charge the jury on the question of implied warranty.
 

 The plaintiff next complains that the trial court refused to charge the jury that a violation of the pure food and drug laws of Ohio is negligence
 
 per se.
 
 The correctness of the plaintiff’s position is shown by the unambiguous language of Section 5775, General Code, which provides
 
 ipsissimis verbis
 
 that “the term Hood,’ as used in this chapter, includes all articles used by man for food, drink, flavoring extract, confectionery, or condiment, whether simple, mixed or compound.” However, the defendant contends that the water supplied to the plaintiff was not “adulterated” within the meaning of Section 5778, General Code, which reads in part as follows:
 

 “Food, drink, confectionery or condiments are adulterated within the meaning of this chapter (1) if any substance or substances have been mixed with it, so as to lower or depreciate or injuriously affect its quality, strength or purity; *
 
 *
 
 * (5) if it consists wholly, or in part, of a diseased, decomposed, putrid, infected, tainted or rotten animal or vegetable substance or article, whether manufactured or not or in the case of milk, if it is the product of a diseased animal; * * * (7) if it contains any added substance or ingredient which is poisonous or injurious to health; * *
 

 
 *431
 
 The court finds itself unable to agree with the de- ' fendant’s' interpretation of these provisions. It seems difficult to find a clearer case of statutory adulteration than under circumstances where the owner of a restaurant so handles sewage as to cause it to reach the source of the water supplied to customers for drinking purposes.
 

 Section 5774, General Code, provides that “no person, within this state, shall manufacture for sale, offer for sale, sell or deliver, or have in his possession with intent to sell or deliver, a drug or article of food which is adulterated within the meaning of this chapter.”
 

 Then Section 12758, General Code, provides a penalty for the sale of adulterated “food” as defined by, the act. Hence the trial court was in error in refusing to instruct the jury that the violation of these statutes is negligence
 
 per se. Portage Markets Co.
 
 v.
 
 George,
 
 111 Ohio St., 775, 146 N. E., 283;
 
 Taugher
 
 v.
 
 Bennington,
 
 127 Ohio St., 142, 187 N. E., 19.
 

 The plaintiff next complains that the trial court refused to charge the jury with reference to a violation of the public health laws relating to the installation of water supply' systems. However, a study of the pleadings shows that this issue was not raised.
 

 The next complaint of the plaintiff is that the trial court erred in permitting the defendant to withdraw a certain clause from its answer after the plaintiff had rested his case. This was a discretionary matter, and an examination of the record discloses no prejudice to the plaintiff.
 

 The final complaint of the plaintiff is that the trial court erred in the use of certain language in its charge on the subject of negligence. However, when the charge is read in its entirety no prejudice is apparent.
 

 For the errors enumerated the judgment of the
 
 *432
 
 Court of Appeals is reversed and the case is remanded to the Court of Common Pleas for retrial.
 

 Judgment reversed and cause remanded.
 

 Matthias, Day, Zimmerman, Williams, Myers and Gorman, JJ., concur.