LONZRICK, APPELLEE, *v.* REPUBLIC STEEL CORP., APPELLANT.

(No. 39493—Decided June 15, 1966.)

*Messrs. Hahn & Swadey* and *Mr. Lad J. Roth,* for appellee.
*Messrs. Jones, Day, Cockley & Reavis, Mr. Edward P. Troxell* and *Mr. Robert J. Hoerner,* for appellant.

228

O'NEILL, J. Plaintiff filed a petition in the Common Pleas Court of Cuyahoga County which alleges:

"On August 22, 1960, at about 10.30 a. m., plaintiff, who was then in the employ of Valley Steel Erectors, Inc., * * * was engaged in his usual occupation of structural iron worker on certain premises known as the 'Stow Industrial Park' located in or near Stow, Ohio, where a new warehouse business was then under construction.

"At said time and place, while he was working on the ground in an area where certain steel roof joists manufactured and sold by defendant had been installed directly overhead, a number of such joists collapsed and fell down upon plaintiff, causing him the injuries and damages hereinafter set forth.
"* * *

"Prior to the occurrence of August 22, 1960, defendant impliedly warranted that the said roof joists were of good and merchantable quality, but said implied warranty was breached by defendant in that said roof joists were not of good and merchantable quality.

"By reason of such breach of warranty on the part of the defendant, the said roof joists came apart in use and fell upon plaintiff while he was working below them in a place in which his presence was reasonably to be anticipated by defendant. As a direct and proximate result, plaintiff sustained the following injuries and damages * * *."

Defendant's demurrer to the petition was sustained, and, plaintiff not desiring to plead further, his action was dismissed and judgment was entered for the defendant.

On appeal, the Court of Appeals reversed the judgment of the Common Pleas Court and remanded the cause to the Common Pleas Court with instructions to overrule the demurrer and for further proceedings according to law.

It may be that the petition in the instant case would be subject to a motion to make some of its allegations definite and certain, especially those allegations as to the implied warranty "of good and merchantable quality" and as to the joists not being "of good and merchantable quality." However, defendant waived its right to file such motion by filing its demurrer. *Clay* v. *Edgerton*, 19 Ohio St. 549. Thus, for the purpose of testing

the legal sufficiency of the petition, defendant's demurrer must be regarded as admitting the truth of the facts alleged and whatever other facts which can by fair and reasonable intendment be inferred from those facts. *Guardian Life Ins. Co. of America* v. *Veser*, 128 Ohio St. 200; *Gugle* v. *Loeser*, 143 Ohio St. 362; *Bell* v. *Salvation Army*, 172 Ohio St. 326.

The allegations of the petition and all reasonable inferences therefrom will support the following statement of facts:

Defendant manufactured and sold certain steel roof joists. In selling those joists, defendant impliedly warranted that they were fit for the ordinary purposes for which such steel roof joists are used. (Section 1302.27, Revised Code, reads in part: "Goods to be merchantable must be at least such as * * * [3] are fit for the ordinary purposes for which such goods are used.") Those joists were defective because they were not fit for the ordinary purposes for which such joists are used. As a proximate result of being so defective, those joists came apart and fell on and injured plaintiff. At that time, plaintiff was working as a structural iron worker on the ground in an area where the joists had been installed directly overhead and was thus in a place where his presence was reasonably to be anticipated by defendant.

The Court of Appeals held that this petition states a good cause of action in tort, based upon the theory of breach of warranty.

This is a products liability case. In such a case, there are three possible causes of action which the plaintiff may pursue:

(1) An action in tort which is grounded upon negligence. Such cause of action does not require the allegation of a contractual relationship between the plaintiff and the defendant. The petition in this case does not allege negligence and does not state facts which constitute negligence.

(2) A cause of action which is based upon contract. Such a cause of action requires that there be a contractual relationship between the plaintiff and the defendant. The petition in this case does not allege a contract and it does not allege a breach of a contractual warranty. It does not allege any contractual relationship between the plaintiff and the defendant.

(3) An action in tort which is based upon the breach of a

duty assumed by the manufacturer-seller of a product. This duty is assumed by the manufacturer by reason of his implicit representation of good and merchantable quality and fitness for intended use when he sells the product. This duty is breached when a defect in the product causes the collapse of the product and is the direct and proximate cause of injury to a person whose presence the defendant could reasonably anticipate. This is the cause of action which the petition in this case states.

In this action the plaintiff is required to allege and prove that there was a defect in the steel joists manufactured and sold by the defendant, that such defect existed at the time the joists were sold by the defendant, that the defect was the direct and proximate cause of plaintiff's injuries, and that the plaintiff, at the time he was injured, was in a place where his presence was reasonably to be anticipated by the defendant.

It is conceded by both parties that the plaintiff does not have an action based upon a contract because there was no contract of sale between the plaintiff and the defendant and, therefore, no contractual relation (privity) between the parties.

The position of the defendant is that the plaintiff's petition does not state a cause of action because it does not allege negligence, does not allege an express warranty and does not allege any contractual relationship between the plaintiff and the defendant.

The plaintiff concedes that this petition does not allege negligence, does not allege an express warranty and does not allege any contractual relationship between the plaintiff and the defendant. The plaintiff asserts that the petition states a cause of action in tort based upon an implied warranty.

The basic question for the court to decide is the same as the question was in *Welsh* v. *Ledyard*, 167 Ohio St. 57, in *Rogers* v. *Toni Home Permanent Co.*, 167 Ohio St. 244, and in *Inglis* v. *American Motors Corp.*, 3 Ohio St. 2d 132. Is the plaintiff restricted to prosecuting his action for damages on the basis of negligence alone, or may he proceed in tort on the theory of breach of warranty?

The precise questions this court is required to determine are: (1) Where a defendant manufactures and sells steel roof joists, is there implicit in the production and sale of this pro-

duct the representation that the joists are of good and merchantable quality and safe for their ordinary intended use? and (2) when, in fact, such steel joists were defective and while being devoted to their ordinary intended use collapsed because of such defect and fell to the floor and injured the plaintiff, who was working on the floor below these steel roof joists in a place where his presence was reasonably to be anticipated by the defendant manufacturer, is such innocent injured party restricted to prosecuting a tort action for damages on the basis of negligence alone, or may he proceed in tort on the theory of an implied warranty?

The defendant relies upon the cases of *Wood* v. *General Electric Co.*, 159 Ohio St. 273, and *Welsh* v. *Ledyard*, 167 Ohio St. 57.

*Welsh* v. *Ledyard, supra*, decided November 27, 1957, is the high-water mark for this court in the assertion of the principle of law that an action for a breach of warranty is an action in contract, and, whether it be an express or an implied warranty, there can be no recovery unless there is a direct contractual relationship between the plaintiff and the defendant.

In *Ledyard, supra*, a housewife was injured by an electrical shock when she grasped the handle of a defective electrical cooking appliance which her husband had purchased from the defendant. *Ledyard* presented the same question as the instant case, that is, can there be a recovery grounded in tort based upon an implied *warranty* where there is no direct contractual relationship between the parties?

The rationale of the majority expressed in the *per curiam* opinion of the court in that case is that the plaintiff could not recover because an action based upon implied warranty is grounded in contract and not in tort. Since the plaintiff's husband had purchased the defective appliance she had no direct contractual relationship with the seller and could not recover from him. As in this case, the petitioner in *Ledyard* did not allege negligence.

The injustice of this position was soon apparent.

In *Ledyard*, the majority of the court announced a rule which denied recovery to the wife who would ordinarily use such a cooking appliance, but indicated that the rule would

allow recovery by her husband in a contract action based upon breach of implied warranty had he suffered the same injury, on the ground that since he was the purchaser he had a direct contractual relation (privity) with the defendant.

The holding in *Ledyard* was not based upon the ground that (1) there was no defect, or (2) no defect was present when the appliance was sold, or (3) the defect was not the proximate cause of plaintiff's injury, or (4) plaintiff was someone that defendant could not reasonably foresee would use this cooking appliance for the purpose for which it was manufactured and sold. Rather the holding in *Ledyard* was grounded upon the fact that plaintiff's husband bought the defective appliance rather than the wife, a circumstance which had no relevance to the fact that the defendant was responsible for the creation of the risk of injury to plaintiff because the defendant produced and sold the defective appliance which injured the plaintiff while she was using it for the ordinary purpose for which it was manufactured.

The high tide of *Ledyard, supra,* was soon to recede.

Two months later, January 29, 1958, *Rogers* v. *Toni Home Permanent Co., supra,* was decided. In the opinion in that case, which has become a landmark in this area of the law nationally, Judge Zimmerman *declined to embrace the rationale of Ledyard, supra.* He was joined by Judges Matthias and Bell, who had dissented in *Ledyard,* and by the late Chief Justice Weygandt.

The plaintiff in *Toni, supra,* had purchased from a retailer a Toni Home Permanent and used it as it was intended to be used and suffered injuries to her hair and scalp by reason of the defective and deleterious ingredients of the product. The defendant relied upon *Wood, supra,* and *Ledyard, supra,* as does the defendant in this case, on the ground that the plaintiff had not purchased from the manufacturer and, thus, had no direct contractual relation (privity) with the manufacturer and, therefore, could not recover in a tort action based upon breach of warranty but must be limited to an action based upon negligence.

Judge Zimmerman succinctly stated the question, at page 245:

"The precise question we are now required to determine is whether * * * such ultimate purchaser is restricted to prosecuting *his action on the basis of negligence alone or whether he may proceed on the theory of an express warranty.*" (Emphasis added.)

In his opinion, Judge Zimmerman established as the law of Ohio two important principles: First, that an action for breach of warranty in a products liability case may sound in tort rather than in contract; and, second, that an injured party may assert a tort action grounded on a breach of warranty, notwithstanding the fact that there was no contractual relationship between the plaintiff and the defendant.

Judge Zimmerman examined the first principle exhaustively in his opinion and cited cases and authorities to support his position. He asserted that an action based upon contract came into the law as an additional or alternative remedy to the action in tort, which had been recognized earlier, based upon breach of an implied or express warranty not arising out of the contract of sale.

He summed up his position on the first principle, in these words, at page 247:

"*A prevalent but mistaken notion is extant that the term, 'warranty,' has always carried the implication of a contractual relationship. From a historical standpoint such a notion is without foundation.* Some of the cases, and well known and respected writers on legal subjects, point out that originally the consumer or user *of an article, which was represented to be in good condition and fit for use and proved not to be,* was accorded redress by an expansion of the action of trespass on the case to include deceit—a fraudulent misrepresentation— which sounds distinctly in tort. *Undoubtedly, the recognition of such a right of action rested on the public policy of protecting an innocent buyer from harm rather than to insure any contractual rights. * * *"* (Emphasis added.)

Judge Zimmerman pointed out what has been repeated by many of the leading legal writers, namely, that the confusion in these cases frequently arises from the fact that the use of the word, "warranty," has often come to have a connotation of being associated with a contract, whereas, prior to the time of the

recognition of an action for breach of warranty based upon contract, there existed the action for breach of warranty in tort. This "kind of warranty" arose not out of a contract of sale but out of the duty of a manufacturer or seller of a product to protect the person consuming or using that product in the ordinary way in which it was intended to be used from the harm of injury to person or property caused by a defect in the product. It is a failure to distinguish between these two different kinds of warranties that has caused confusion in the law, and, in our modern-day mass-production and mass-distribution industrial system, this has resulted in some of the unjust technical decisions based upon outmoded and irrelevant concepts of privity.

Judge Zimmerman stated his position with regard to the second principle of law which he established by his opinion, in the following words, at page 246:

"In asking for a reversal of the judgment of the Court of Appeals, defendant places great reliance on the comparatively recent case of *Wood* v. *General Electric Co.*, 159 Ohio St. 273 * * *.

"* * *

"* * * [That] rule is based on the proposition that to support an action grounded on an implied warranty there must be contractual privity between the buyer who sues and the seller against whom the suit is brought.

"*It must be confessed that the prevailing view is that privity of contract is essential in an action based on a breach of an express or implied warranty, and that there is no privity between the manufacturer of an article and the ultimate purchaser thereof from a retailer, where the ultimate purchaser was in no way a party to the original sale.* * * *

"* * *

"Other writers have no hesitancy in asserting that in the beginning *an action on 'breach of warranty' was a tort action to give relief for the breach of a duty assumed by the seller,* and that the introduction at a much later date of the method of declaring on a warranty *'indebtitatus assumpsit'* (an implied promise or obligation on the part of one to pay to another what in fairness and good conscience the former should pay) *constituted the recognition of an additional or alternative remedy of*

*a contractual aspect to secure relief where a breach of warranty is involved. * * *"* (Emphasis added.)

Judge Zimmerman realized full well that he was changing the law in this field of law by returning to an earlier recognized remedy granted by the courts, and he so stated at page 249:

"We are fully aware that the position outlined is opposed to the present weight of authority and may conflict with previous decisions of this court. However we consider it a reasonable and logical approach today in keeping with the modern methods of doing business."

Judge Zimmerman was right in his appraisal that the weight of authority, at the time he wrote the opinion, did not support his position. However, today, the overwhelming weight of authority in the cases which have been decided since he wrote his opinion support the position which he took and have extended the law, as stated in paragraph three of the syllabus of *Toni*, to include implied warranty.

Judge Zimmerman foresaw that the acceptance of these concepts would bring additional changes in the Ohio law. It is doubtful, however, that Judge Zimmerman was prepared for the rapidity with which these principles of law which he announced would be accepted in most of the leading jurisdictions of the United States.

Judge Herbert, in another landmark decision, in *Inglis* v. *American Motors Corp., supra,* followed the principles of law asserted by Judge Zimmerman in *Toni, supra,* and extended the rule to allow a tort action based upon breach of warranty rather than upon negligence for property damage (*Toni* involved only personal injuries), where no direct contractual relationship existed between the plaintiff and the defendant manufacturer.

In the case before this court, the controlling principles of law were established by Judge Zimmerman in *Toni, supra,* and Judge Herbert in *Inglis, supra.*

This is an action in tort for breach of an implied warranty. The warranty in this case is the manufacturer's representation, implicit in the sale of the steel joists, that they were of good and merchantable quality, fit and safe for their ordinary intended use. This created a duty upon the manufacturer-seller,

which duty was breached when the joists proved defective and collapsed because of the defect, injuring plaintiff.

Judge Zimmerman, in *Toni,* and Judge Herbert, in *Inglis,* considered representations in national advertising as an express warranty under which the manufacturer assumed the duty and upon which a plaintiff could be said to have relied in making a purchase of a product and held that when a defect in such product caused personal injury or property damage the defendant breached the duty and the plaintiff-user was not restricted to an action based upon negligence alone but could recover upon an action in tort based upon the breach of warranty, and that in such action no contractual relation (privity) between the plaintiff-user and the defendant-manufacturer is required.

It is, then, settled law in this state, *Toni, supra,* and *Inglis, supra,* that there can be an action in tort, based upon breach of warranty, and no contractual relation between the plaintiff and the defendant is required.

The question which remains to be determined in this case is: Where it is conceded that a manufacturer produced and sold steel joists, implicitly representing that they were of good and merchantable quality, fit and safe for the ordinary purposes for which such steel joists are used, but without advertising the product, is an innocent plaintiff-user, whose presence the defendant could reasonably anticipate and who is injured because a defect in the joists caused them to fall upon him, restricted to an action based on negligence alone, or can he recover in an action in tort based upon breach of this implied warranty where he was not in direct contractual relation (privity) with the manufacturer-defendant?

It is evident that to deny this plaintiff the right to state a good cause of action in tort, based upon such implied warranty, is to hold that a plaintiff, such as the car buyer in *Inglis,* who bought the same make of car and suffered the same damage as a result of the same defect as the car buyer in *Inglis,* would be denied recovery if he in fact had not read a national advertisement or other written material published by the manufacturer about the car; or that, if a neighbor of the plaintiff in *Toni* had bought the same home permanent kit and suffered the same injury from the same defect, she would be denied

recovery if she had not read the national advertisement or other written material published by the manufacturer.

To state the result of this kind of rule is to point out its essential injustice.

The rulings in *Toni* and *Inglis* were sound in allowing recovery to the plaintiff in a tort action based upon an express warranty.

The fact that the plaintiff saw the advertisement is a sound basis for recovery, *but the fact that he did not read an advertisement is not a sound basis for denying recovery.* Such a rule looks not to the defect in the product which produced the injury, but focuses upon the question of whether the plaintiff saw an advertisement, which is not relevant to the creation of the risk of harm to the plaintiff.

Some argue that to allow recovery in the kind of case now before the court means that the court is imposing absolute liability upon the defendant. That is not so.

If this case comes to trial before a jury, there may well be a directed verdict for the defendant if the plaintiff fails in his proof of any one of the elements required to be proved in order to have his case submitted to the jury. If the case goes to the jury, there may well be a verdict for the defendant.

For the plaintiff to recover, he must prove, by the required degree of proof, that the joists were defective, that they were defective at the time the manufacturer sold them, that the defect caused them to collapse while they were being used for their ordinary intended purpose, that the defect was the direct and proximate cause of the plaintiff's injury, and that the plaintiff's presence was in a place which the defendant could reasonably anticipate.

Each of these elements of the plaintiff's case is a jury question, including the question of proximate cause.

Defendant has available the opportunity to offer evidence in defense on each of these necessary elements of the plaintiff's case, and also has available the defense of assumption of risk and intervening cause.

An examination of *Wood* and *Ledyard* as to the fundamental reasons on which the decisions in those cases were based is of no help.

The *per curiam* opinion in *Ledyard* does not state any reasoning upon which the result rested, but rather arbitrarily cites as authority the holdings of previous cases, as at page 60, where the court cites *Wood, supra,* and quotes, from Judge Williams, in *Canton Provision Co.* v. *Gauder, a Minor,* 130 Ohio St. 43, 48, as follows:

"* * * An implied contract of warranty requires a meeting of the minds the same as does an express contract. * * * There was no privity of contract between the plaintiff and either of the defendants for the petition alleges that the liver pudding was purchased by the plaintiff's mother. Any liability that exists in the instant case therefore necessarily arises out of tort [negligence]."

*Wood, supra,* is no more illuminating. As a basis for the decision, the opinion in that case simply makes the arbitrary statement, at pages 278, 279:

"* * * To support an implied warranty there must be contractual privity between the seller and the buyer.

"Although a subpurchaser of an inherently dangerous article may recover from its manufacturer for negligence, in the making and furnishing of the article, causing harm to the subpurchaser or his property from a latent defect therein, no action may be maintained against such manufacturer by such subpurchaser for such harm, based upon implied warranty of fitness of the article so purchased. * * * Here, there was no such privity and hence no implied warranty upon the part of General Electric and no valid issue on that subject."

It must be noted that this rationale is contra to Judge Zimmerman's reasoning and conclusions in *Toni.*

Judge Zimmerman recognized this at page 249, where he said:

"Without commenting on the soundness of the holding in the *Wood case,* in light of what has been stated above, suffice it to say that should a case come before this court with facts resembling those in the *Wood case,* it would then be time to reexamine and reappraise that decision."

In *Wood,* the opinion relied upon the Restatement of the Law of Torts, which has since been changed to approve such an action.

Supporting the position of plaintiff and the Court of Appeals are the following authorities: *Greenman* v. *Yuba Power Products, Inc.*, 59 Cal. 2d 57, 377 P. 2d 897; *Vandermark* v. *Ford Motor Co.*, 61 Cal. 2d 256, 391 P. 2d 168; *Garthwait* v. *Burgio* (Conn.), 216 A. 2d 189; *Suvada* v. *White Motor Co.*, 32 Ill. 2d 612, 210 N. E. 2d 182; *Spence* v. *Three Rivers Builders & Masonry Supply, Inc.*, 353 Mich. 120, 90 N. W. 2d 873; *Piercefield* v. *Remington Arms Co., Inc.*, 375 Mich. 85, 133 N. W. 2d 129; *Morrow* v. *Caloric Appliance Corp.* (Mo.), 372 S. W. 2d 41; *Santor* v. *A and M Karagheusian, Inc.*, 44 N. J. 52, 207 A. 2d 305; *Cintrone* v. *Hertz Truck Leasing & Rental Service*, 45 N. J. 434, 212 A. 2d 769; *Goldberg, Admx.*, v. *Kollsman Instrument Corp.*, 12 N. Y. 2d 432, 191 N. E. 2d 81; *Marathon Battery Co.* v. *Kilpatrick* (Okla.) CCH Prod. Liab. Rep. 5501; *Wights* v. *Staff Jennings, Inc.* (Ore.), 405 P. 2d 624; *Ford Motor Co.* v. *Lonon* (Tenn.), 398 S. W. 2d 240; Restatement of Law of Torts 2d, Section 402A; Prosser on Torts (3 Ed.) 672 *et seq.*, Section 97, pp. 672 ff; and 2 Harper and James, The Law of Torts, 757, Section 12.4.

In Ohio the law in the field of products liability has had a slow, orderly and evolutionary development. In 1958, *Toni* established an action in tort based upon an express warranty for the recovery for personal injuries. In 1962, the Ohio General Assembly enacted the Uniform Commercial Code. Section 1302.31, Revised Code, a section of the Commercial Code, provides for extending a seller's warranty whether express or implied to any natural person the family or household of his buyer, or who is a guest in his home, if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty.

The effect of this section of the Code is to reverse the result in *Ledyard* by extending an express or implied warranty, arising out of a contract of sale, to the additional persons designated in that section.

In 1965, in *Inglis*, an action in tort based upon an express warranty was established allowing recovery for property damage.

In *Stump* v. *Phillians*, 2 Ohio St. 2d 209, this court held that, where a defendant's brakes failed because of a defect in manu-

facture, which could only have been detected by a fluoroscopic inspection method, which defect caused a weld to break and pulled the hydraulic fluid line and the emergency brake cable causing both to break with tension and leaving the vehicle with no means of applying the brakes, the defendant was liable as a matter of law and, as a matter of law, his negligence was the proximate cause of the injuries to the plaintiff.

If the rule is just in *Stump, supra,* certainly it would have been just for the defendant in that case to be able to recoup his loss from the manufacturer by proving the defect was present when the brake left the manufacturer's plant, and that the defect was the proximate cause of the defendant's loss, without the burden of alleging and proving negligence.

Judge Zimmerman dissented in that case on the ground that the question of proximate cause should be one for the jury.

Under the proper rule applicable to this case, all the elements of the plaintiff's case are jury questions, including proximate cause.

In the posture of the present case, which is a demurrer to a petition, the cause of action asserted represents a normal development in the law in this field.

The petition in this case states a good cause of action grounded in tort, based upon a breach of the representations which are implicit when a defendant manufactures and sells a product which, if defective, will be a dangerous instrumentality.

*Judgment affirmed.*

ZIMMERMAN, MATTHIAS and HERBERT, JJ., concur.
TAFT, C. J., SCHNEIDER and BROWN, JJ., dissent.

TAFT, C. J., dissenting. If followed, the syllabus and judgment in the instant case would make the manufacturer and seller of a product (here, steel roof joists) an insurer without limit of any damage proximately caused by a defect existing in his product at the time of its sale, even though no amount of care could have eliminated that defect, even though such manufacturer made no representations about his product to anyone, and even though no one knew that it was his product.

In my opinion, it is particularly unfortunate that this court should announce such a revolutionary decision where the case before it does not even have in it a basic fact regarded in the syllabus and in the majority opinion as essential for the decision described therein.

Both deal only with a case in which defendant's product was defective at the time of its sale by defendant. There is no allegation in plaintiff's petition that defendant's product was then defective.

The petition does allege that "defendant impliedly warranted that the said roof joists were of good and merchantable quality," and that "said implied warranty was breached by defendant in that said roof joists were not of good and merchantable quality." There is no allegation as to the respect in which the joists were not of such quality.

There are no other allegations which help us to give any meaning at all to the allegations as to defendant's warranty and breach of warranty. Hence, we must look elsewhere for guidance.

At the time plaintiff's petition was drawn, Section 1302.-27, Revised Code, provided in part that "goods to be merchantable must be at least such as: (1) Pass without objection in the trade under the contract description * * *."

Thus, under the allegations of the petition, the roof joists sold by defendant could have been not "of good and merchantable quality" if defendant supplied them in a weight-bearing capacity per unit of length lighter than that specified, although they were not defective in any way whatever, and even if their actual weight-bearing capacity was clearly marked on them. In such an instance, they would not "pass without objection in the trade under the contract description" for the heavier weight-bearing capacity. Thus, there would be a breach of the alleged warranty of merchantable quality even though the joists were not defective in any way.[1]

---

[1] An extreme example of this is *Bennison* v. *Stillpass* (1965), 5 Ohio St. 2d 122, 214 N. E. 2d 213, announced a few weeks after the argument of the instant case. There, this court held that mere proof of breach of a contract as to the condition that an article was to have when delivered would not authorize an inference that the article was in a defective condi-

If the plaintiff's petition had included allegations that the joists were defective when sold by defendant and that their defective condition was a proximate cause of plaintiff's injuries, then its allegations would have been sufficient, with help from the doctrine of *res ipsa loquitur,* to state a cause of action in negligence. See Prosser, The Assault Upon the Citadel (Strict Liability to the Consumer) (1960), 69 Yale L. J. 1099;[2] *Edelstein* v. *Cook* (1923), 108 Ohio St. 346, 140 N. E. 765, 31 A. L. R. 1333; *Soltz* v. *Colony Recreation Center* (1949), 151 Ohio St 503, 87 N. E. 2d 167. Thus, if the petition had included the allegations that the joists were defective when sold by defendant, and that their defective condition was a proximate cause of plaintiff's injuries, it would be unneccessary for this court to go beyond well settled principles of law to determine, as it has, that the petition states a cause of action.

---

tion when delivered. In that case, defendant supplied to plaintiff's decedent's employer a tank which "contained vapors of an explosive nature * * * the tank exploded and plaintiff's decedent was killed as a result of the explosion." In the opinion by O'Neill, J., it is stated at page 125:

"The duty under the contract * * * was to send a tank which was 'clean' [*i. e.,* one that admittedly would contain no explosive vapors] * * *.
"* * *

"* * * In order for the plaintiff to recover it would be necessary to determine that the gasoline vapors in the tank constituted a 'defective condition' * * *.

"* * * it can not be said that the gasoline vapors in the tank constituted a 'defective condition' * * *."

[2]Dean Prosser states:

"One may well ask at the outset, why is not liability for negligence enough? Why do the plaintiffs want strict liability * * *.

"Where the action is against the manufacturer of the product, an honest estimate might very well be that there is not one case in a hundred in which strict liability would result in recovery where negligence does not. When a negligence action is brought against a manufacturer, the plaintiff is faced with two initial tasks. One is to prove that his injury has been caused by a defect in the product. The other is to prove that the defect existed when the product left the hands of the defendant. For neither of these is strict liability of any aid to him whatever. It cannot prove the causation; and it cannot trace that cause to the defendant. Once over these two hurdles, the plaintiff has a third task, to prove that the defect was there because of the defendant's negligence. This is by far the easiest of the three, and it is one in which the plaintiff almost never fails.

"It is true that he has the burden of proof on the issue of negligence.

The syllabi and decisions in *Rogers* v. *Toni Home Permanent Co.* (1958), 167 Ohio St. 244, 147 N. E. 2d 612, and *Inglis* v. *American Motors Corp.* (1965), 3 Ohio St. 2d 132, 209 N. E. 2d 583, are inconsistent with and do not in any way support the syllabus and judgment of the instant case. This is apparent from a comparison of the allegations of the petition in the instant case with the essential requirements for a cause of action specified in the syllabi of the *Rogers* and *Inglis* cases.

In *Rogers*, the syllabus reads in part:

"2. An express warranty is an affirmation of fact by the seller as to a product or commodity to induce the purchase thereof, on which affirmation the buyer *relies* in making the purchase.

"3. Under modern merchandising practices, where the manufacturer of a product in his advertising makes representations as to the quality and merit of his product aimed directly at the ultimate consumer and urges the latter to purchase the product from a retailer, and such ultimate consumer does so *in reliance on* and pursuant to the inducements of the manufacturer and suffers harm in the use of such product by reason of deleterious ingredients therein, such ultimate consumer may maintain an action for damages immediately against the manufacturer on the basis of express warranty, notwithstanding that there is no direct contractual relationship between them." (Emphasis added.)

The recovery there allowed was in tort. However, it is apparent that the tort contemplated was one, similar to that of deceit, requiring reliance by the consumer on the affirmations or representations of the seller. (See paragraphs two and three of syllabus and opinion at page 247.)

There is nothing in the petition in the instant case from which even an inference could be drawn that plaintiff knew

---

It is true also that he seldom, if ever, has any direct evidence of what went on in the defendant's plant. But in every jurisdiction, he is aided by the doctrine of *res ipsa loquitur*, or by its practical equivalent. In all jurisdictions this at least gives rise to a permissible inference of the defendant's negligence, which gets the plaintiff to the jury. And in cases against manufacturers, once the cause of the harm is laid at their doorstep, a jury verdict for the defendant on the negligence issue is virtually unknown."

that defendant had supplied the steel joists. In other words, the essential elements of representations and reliance thereon emphasized in paragraphs two and three of the syllabus of the *Toni case* are not present in the instant case.

There is no allegation that plaintiff or anyone else relied upon any implied warranty or any representation of defendant.

The necessity of "reasonable reliance" by the plaintiff is also emphasized, especially in paragraph three of the syllabus in *Inglis* v. *American Motors Corp., supra* (3 Ohio St. 2d 132).

Where products are sold as those of a particular maker who has advertised the general quality of his goods, the reasons underlying our decision in *Rogers* v. *Toni Home Permanent Co., supra* (167 Ohio St. 244), may be applicable and justify implication of a warranty even though there is no express warranty, and *Rogers* v. *Toni Home Permanent Co., supra,* may therefore require some modification of our decision in *Wood* v. *General Electric Co.* (1953), 159 Ohio St. 273, 112 N. E. 2d 8.

However, that is not this case. There is no allegation of any reliance by anyone on any implied representations or warranties of defendant.

In the opinion in *Rogers* v. *Toni Home Permanent Co., supra* (167 Ohio St. 244), it is stated, at page 249, that "an express warranty excludes an implied warranty," and in the opinion in *Inglis* v. *American Motors Corp., supra* (3 Ohio St. 2d 132), at page 140, which purports to follow the foregoing statement, it is stated that "where there are express warranties alleged * * * there is no need for the law to imply a warranty."

Unless, therefore, we overrule the requirements of reliance specified in the syllabi of those last two named cases, we will have the incredible result that a non-negligent manufacturer of a defective product will be liable to someone proximately injured by its defective condition if he says nothing; but such manufacturer will not be liable, where he has made express warranties about the good condition of his defective product, unless the injured party alleges and proves that he relied on those express warranties.

The Court of Appeals recognized that "use of the word 'warranty' is probably improper" in explaining what this court is doing in the instant case, and that what it is really doing is recognizing a cause of action for "strict tort liability." See *Lonzrick* v. *Republic Steel Corp.* (1964), 1 Ohio App. 2d 374, 384, 205 N. E. 2d 92.

Quite obviously, as is apparent from the authorities cited, the legal conclusions set forth in paragraph two of the syllabus represent a somewhat disguised statement of what is usually referred to as the doctrine of "strict tort liability."

This doctrine of strict tort liability has for some time been vigorously promoted by certain law professors (see for example Prosser, The Assault Upon the Citadel [Strict Liability to the Consumer], *supra* [69 Yale L. J. 1099]; Harper and James, The Law of Torts, 752 and 1605, Sections 12.4 and 28.33; James, General Products—Should Manufacturers be Liable Without Negligence [1957], 24 Tenn. L. Rev. 923; James, Products Liability [1955], 34 Texas L. Rev. 44, 192; Wade, Strict Tort Liability of Manufacturers [1965], 19 Southwestern L. J. 5) and by at least one organized group of lawyers (see for example 31 Journal of the American Trial Lawyers Association [1965], 247 to 254, 256 to 259, 261 to 267, 268 to 273, 275 to 279).

The doctrine was recently incorporated in Section 402A of the American Law Institute Restatement of the Law of Torts 2d for which Dean Prosser is the reporter. See Smyser, Products Liability in the American Law Institute; a Petition for Rehearing (1965), 42 U. of Detroit L. J. 343.

As stated in 74 A. L. R. 2d 1111, at 1131:

"It is frequently stated that it is a 'general rule' that a manufacturer or seller of a product alleged to have caused injury cannot be held liable therefor, on the ground of negligence, to one with whom he is not in privity of contract. At the foundation of this 'general rule' as to the nonliability of a manufacturer to a remote vendee or ultimate consumer of the manufactured product is the English decision in * * * *Winterbottom* v. *Wright* (1842), 10 Mees and W. 109, 152 Eng. Rep. 402."

The unsoundness of the rule of *Winterbottom* v. *Wright,*

*supra,* led to what Dean Prosser, in quoting from Mr. Justice Cardozo, has referred to as "The Assault Upon the Citadel of Privity."

Apparently, those who have been successful in destroying the rule of *Winterbottom* v. *Wright* have become so enthusiastic as not to be satisfied with mere liability of the manufacturer for negligence, even where they have the help of the doctrine of *res ipsa loquitur* in establishing that negligence. As Dean Prosser pointed out, they are and have been carrying their "assault * * * against the fortress of strict liability." Prosser, *supra* (69 Yale L. J. 1099), 1103.

Apparently much of the enthusiasm for this latter assault represents a residue of the enthusiasm left over after the successful "Assault Upon the Citadel of Privity" which destroyed the rule of *Winterbottom* v. *Wright.*

This court should be able to consider whether it should succumb to the "Assault * * * Against the Fortress of Strict Liability" without being subject to the influence of any such residue of enthusiasm. The rule of *Winterbottom* v. *Wright* was rejected in this state long before the much more publicized case of *McPherson* v. *Buick Motor Car Co.* (1916), 217 N. Y. 382, 111 N. E. 1050, L. R. A. 1916F 696, Ann. Cas 1916C 440. The rule was rejected by this court in *Davis* v. *Guarnieri* (1887), 45 Ohio St. 470, 491, 15 N. E. 350, and in *Pennsylvania Rd. Co.* v. *Snyder* (1896), 55 Ohio St. 342, 351, 361, 45 N. E. 559. Our subsequent holdings to the same effect are *Sicard* v. *Kremer* (1938), 133 Ohio St. 291, 13 N. E. 2d 250; *Witherspoon* v. *Haft* (1952), 157 Ohio St. 474, 106 N. E. 2d 296; *Thrash, a Minor,* v. *U-Drive-It Co.* (1953), 158 Ohio St. 465, 110 N. E. 2d 419 (as to defendant Spot Motors); *Durham* v. *Warner Elevator Mfg. Co.* (1956), 166 Ohio St. 31, 139 N. E. 2d 10.

From comment (b) to Section 402 A of the American Law Institute Restatement of Torts 2d, it appears that the cases supporting the rule stated in that section were decided after 1950 and represent an extension of the rule of strict liability of the seller of food for human consumption. That comment points out that the earlier food decisions "displayed considerable ingenuity in evolving more or less fictitious theories of liability to fit the case," but that "in later years the courts

have become more or less agreed upon the theory of a 'warranty' from the seller to the consumer, either 'running with the goods' by analogy to a covenant running with the land, or made directly to the consumer," and "other decisions have indicated that the basis is merely one of strict liability in tort, which is not dependant upon either contract or negligence."

In Ohio there has been no need for any such ingenuity. The violation of a statute passed for protection of the public is negligence per se. *Schell* v. *DuBois, Admr.* (1916), 94 Ohio St. 93, 113 N. E. 664; *Coal Co.* v. *Estievenard* (1895), 53 Ohio St. 43, 40 N. E. 725. Hence, because of our holdings that a violation of our pure-food statutes represents negligence per se, there has never been any occasion for this court to consider whether, or for any one to argue that, apart from those statutes, strict liability in tort should be imposed on the seller of food. See, for example, *Portage Markets Co.* v. *George* (1924), 111 Ohio St. 775, 146 N. E. 283; *Canton Provision Co.* v. *Gauder, a Minor* (1935), 130 Ohio St. 43, 196 N. E. 634; *Great Atlantic & Pacific Tea Co.* v. *Hughes* (1936), 131 Ohio St. 501, 3 N. E. 2d 415; *Kniess* v. *Armour & Co.* (1938), 134 Ohio St. 432, 17 N. E. 2d 734; *Yochem* v. *Gloria, Inc.* (1938), 134 Ohio St. 427, 17 N. E. 2d 731; *Rubbo* v. *Hughes Provision Co.* (1941), 138 Ohio St. 178, 34 N. E. 2d 202; *Wolfe* v. *Great Atlantic & Pacific Tea Co.* (1944), 143 Ohio St. 643, 56 N. E. 2d 230; *Allen* v. *Grafton* (1960), 170 Ohio St. 249, 164 N. E. 2d 167. From the foregoing decisions, it is apparent that our General Assembly has full power to readily impose what is in effect strict liability in tort on sellers of tangible items other than food if it should deem it advisable or desirable to do so. In some instances, it has. See, for example, *Spaulding* v. *Waxler* (1965), 2 Ohio St. 2d 1, 205 N. E. 2d 890; *Bird* v. *Hart* (1965), 2 Ohio St. 2d 9, 205 N. E. 2d 887; and *Stump* v. *Phillians* (1965), 2 Ohio St. 2d 209, 207 N. E. 2d 762.

Without such statutory help and in the absence of an express warranty, this court refused to do so in *Wood* v. *General Electric Co., supra* (159 Ohio St. 273), and in *Welsh* v. *Ledyard* (1957), 167 Ohio St. 57, 146 N. E. 2d 299.

Thereafter, the General Assembly apparently considered the problems with which we dealt in deciding those cases and

248

*Rogers* v. *Toni Home Permanent Co., supra* (167 Ohio St. 244), and enacted a statute which in effect overrules our decision in *Welsh* v. *Ledyard, supra* (167 Ohio St. 57), (see Section 1302.31, Revised Code, extending seller's express or implied warranty "to any natural person who is in the family or household of his buyer" as the plaintiff in *Welsh* v. *Ledyard* was); but the General Assembly did nothing to interfere with our decision in either the *Wood* or *Toni case.*

We have the power to overrule *Wood* v. *General Electric Co., supra* (159 Ohio St. 273), and also to overrule the limitations requiring reliance of the plaintiff on representations of the defendant, which we provided for in deciding *Rogers* v. *Toni Home Permanent Co., supra,* and later required in *Inglis* v. *American Motors Corporation, supra* (3 Ohio St. 2d 132). We may do this even though the General Assembly, by what it did and did not do, has apparently indicated its approval of those limitations and of the case of *Wood* v. *General Electric Co., supra.* However, in my opinion, that apparent legislative approval should be given weight and respect in deciding the instant case.

Dean Prosser has confessed that the only substantial argument for the doctrine of "strict liability in tort" of the seller of a chattel is (Prosser, *supra* [69 Yale L. J. 1099], 1120) "the 'risk spreading' argument, which maintains that the manufacturers, as a group and an industry, should absorb the inevitable losses which must result in a complex civilization from the use of their products, because they are in the better position to do so, and through their prices to pass such losses on to the community at large." He then quotes from Justice (now Chief Justice) Traynor's opinion in *Escola* v. *Coca Cola Bottling Co.* (1944), 24 Cal. 2d 453, 461, 150 P. 2d 436, as follows, and we have interpolated in brackets some comments with regard thereto:

"Those who suffer injury from defective products are unprepared to meet its consequences [agreed]. The cost of an injury and the loss of time or health may be an overwhelming misfortune to the person injured [agreed], and a needless one, for the risk of injury can be insured by the manufacturer and distributed among the public as a cost of doing business. [We

do not know. A legislature could conduct hearings which would enable it to determine whether this "risk can be insured by the manufacturer" or otherwise "distributed among the public as a cost of doing business."] It is to the public interest to discourage the marketing of products having defects that are a menace to the public [agreed—our present law does so]. If such products nevertheless find their way into the market it is to the public interest to place the responsibility for whatever injury they may cause upon the manufacturer, who, even if he is not negligent in the manufacture of the product, is responsible for its reaching the market [maybe—but a legislature has more means of determining through hearings than a court does whether so placing responsibility would unduly interfere with "desirable activity." See 2 Harper and James, The Law of Torts, 757, Section 12.4]. However intermittently such injuries may occur and however haphazardly they may strike, the risk of their occurrence is a constant risk and a general one. Against such a risk there should be general and constant protection [agreed] and the manufacturer is best situated to afford such protection [but how? A legislature has the power to devise ways which no court can]."

Another reason why a court cannot cope with the reasons for strict liability suggested by Justice Traynor, as well as a legislature, was stated by Dean Prosser as follows (Prosser, *supra* [69 Yale L. J. 1099], 1121):

"* * * Even the distribution of the losses through insurance may be a process that has its flaws. Until we develop, by analogy to workmen's compensation, a comprehensive system of compulsory insurance with rigidly limited damages—which no one as yet seems to have proposed specifically in this particular field—there will always be uninsured defendants, there will always be liability in excess of coverage, and there will be members of the group whose competitive situation does not permit them to pass on the cost of the insurance to their customers. * * *"

There is considerable appeal to the idea of spreading the risk of loss to an individual from a particular activity over those who engage in that activity and profit from it. However, before determining to do so with respect to the manufacture and

sale of a particular product, a court should at least consider questions such as:

(1) What additional liability would be involved?

(2) Could insurance be procured against such additional liability?

(3) If so, what would its cost be?

(4) Could such cost be passed on to buyers of the product?

How can a court know the answers to such questions? A court such as this has no means of even exploring them. However, these are problems which a legislature can fully explore.

This court has no reliable information which would justify it in jettisoning existing products liability law and manufacturing new rules of law. To do so, could seriously affect the level of industrial activity in Ohio, and it could substantially increase manufacturing costs and result in either higher consumer prices, if the costs could be passed on, or many bankruptcies, if they could not.

Further, it is submitted that our General Assembly has, by what it has done, indicated an intention that strict tort liability should not be imposed upon the manufacturer of a product in a case such as that now assumed by the majority to be before this court for decision.

For example, as late as 1957, the General Assembly revised our laws dealing with pure foods and drugs (127 Ohio Laws 819). At that time, it knew that it would be negligence per se to make a sale prohibited by such a statute; and, as a result, such a statutorily prohibited sale would in effect involve ''strict liability in tort.'' See citations, *supra*, page 247. However, the General Assembly has never enacted any statute which could possibly be construed to prohibit the sale of defective steel joists, and thereby in effect to impose strict liability in tort on the seller of such joists.

Thus, although the General Assembly has recently legislated so as to impose in effect strict tort liability on the manufacture and sale of certain defective products, it has not dealt with steel joists.

Finally, the legislative history of the Uniform Commercial Code, which was enacted in this state in 1962 (129 Ohio Laws

13), clearly indicates a legislative intention against imposing liability such as that approved by the syllabus and judgment of the instant case. See note "Implied Warranty, Strict Liability for Personal Injuries, and the Uniform Commercial Code, Section 2-318, 13 University of Kansas L. Rev. 411 (1965).

The May 1949 draft of Section 2-318 of the Uniform Commercial Code extended liability for breach of a seller's express or implied warranty to "one whose relationship [to the buyer] * * * is such as to make it reasonable to expect that such person may use, consume or be affected by the goods * * *." This would have expressly permitted an action such as approved by the syllabus and judgment in the instant case. See James, Products Liability, *supra* (34 Texas L. Rev. 44, 192 at 194, Note 10).

However, Section 2-318 was modified in the 1952 official draft so as to provide that such warranty "extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume, or be affected by the goods and who is injured in person by breach of the warranty."

As so modified, Section 2-318 became Section 1302.31, Revised Code[*] (see variations in the Ohio Enactment of the Uniform Commercial Code, 14 Western Reserve L. Rev. 22 [1962]); and, as hereinbefore mentioned, that statute had the necessary effect of overruling *Welsh* v. *Ledyard, supra* (167 Ohio St. 57), but approving *Wood* v. *General Electric Co., supra* (159 Ohio St. 273).

If Comment 3 to that statutory section, as prepared by the American Law Institute and the National Conference of Commissioners on Uniform State Laws (see 13 Page's Revised Code, Annotated 7, 55), is regarded as expressing any legislative intent, it clearly indicates an intention that a seller's warranties shall not extend to a person who is not "in the distributive chain." The plaintiffs in *Rogers* v. *Toni Home Permanent Co., supra* (167 Ohio St. 244), and *Inglis* v. *American Motors Corp., supra* (3 Ohio St. 2d 132), were each "in the

---

[*]Unlike Section 1302.31, Revised Code, the recently enacted procedural Section 2307.382(5) does not purport to extend the right of recovery beyond those to whom a warranty is "made."

252

distributive chain." Admittedly, plaintiff is not "in the distributive chain" and is not one of those specified by the statute as one to whom a seller's warranty should extend.

Thus, the syllabus and judgment in the instant case disregard the intention expressed by the General Assembly when it adopted Section 1302.31, Revised Code. See *Hochgertel* v. *Canada Dry Corp.* (1963), 409 Pa. 610, 187 A. 2d 575.

SCHNEIDER and BROWN, JJ., concur in the foregoing dissenting opinion.

SCHNEIDER, J. I desire to add that the basic underlying difference dividing the court is not the absence of privity but the operative effect of the decision, which eliminates from the consideration of the trier of the facts *any* standard of care to which the defendant would be required to adhere. In short, if the plaintiff should succeed in laying the defect which proximately caused his injury at the door of defendant's place of business, the defendant will be permitted no explanation of any transaction occurring therein, including that which might tend to show that every precaution known to man was exercised to prevent the occurrence of the claimed defect.