Alexander TOTH, Jr. and Velma Toth, Plaintiffs-Appellees,

v.

CORNING GLASS WORKS, Defendant-Appellant.

No. 18274.

United States Court of Appeals
Sixth Circuit.

June 5, 1969.

Robert P. Bartlett, Dayton, Ohio, for appellant; John O. Henry, Dayton, Ohio, on brief; Estabrook, Finn & McKee, Dayton, Ohio, of counsel.

Frank J. Thermes, Dayton, Ohio, for appellees; Holzfaster, Hoefling & Cecil, Dayton, Ohio, of counsel.

Before PHILLIPS, EDWARDS and McCREE, Circuit Judges.

McCREE, Circuit Judge.

This is an appeal from the District Court's judgment, entered on a jury verdict, awarding Alexander Toth, Jr., appellee, the sum of Six Thousand Dollars for injuries suffered as a result of a defect in a ceramic coffee pot which appellant manufactured. The questions presented are whether there was sufficient evidence to permit the jury to find that the coffee pot was defective at the time appellant sold it and whether the District Court's failure, *sua sponte,* to dismiss the claim of appellee's wife for loss of her husband's services, or, without having been requested, to instruct the jury not to consider such loss in assessing damages, constitutes reversible error.[1]

In 1962, appellee bought a ceramic percolator coffee pot manufactured by appellant as a Christmas present for his wife. On July 28, 1964, while she was pouring some coffee from the pot into her husband's cup, the pot broke into several pieces and its contents spilled onto appellee severely burning him. He initiated this action in the Common Pleas Court of Montgomery County, Ohio and it was removed to the District Court where, after a trial by jury, judgment was entered for appellee.

Jurisdiction is based on diversity and the law of Ohio controls. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

We determine that there was sufficient evidence for the jury to find that a defect in the coffee pot caused the failure of the vessel. Under the law of Ohio, a defect exists if a product is not fit for the ordinary purposes for which it is to be used. Lonzrick v. Republic Steel Corp., 6 Ohio St.2d 227, 218 N.E.2d 185 (1966). Experts for both sides testified that the failure occurred when a small crack at the top of, and inside, the pot's ceramic bowl spread throughout a substantial portion of the vessel. There was evidence from which the jury could have found that this initial crack was formed when the inside of the pot was bumped slightly against a water faucet while the appliance was being filled. Moreover, an employee of appellant testified that it was expected that this type of pot would

1. Defendant contends that under Ohio law a wife has no cause of action for damages for loss of consortium with her husband.

be filled from a faucet. Therefore, the jury could have found, although the point is not stressed on appeal,[2] that the pot was defective since it could not withstand the insubstantial bumping which was a consequence of intended foreseeable use. Finally, there was no direct testimony of misuse and the jury could have found from Mrs. Toth's testimony that no misuse occurred.

■ The remaining issue does not require reversal of the judgment. Despite appellant's failure to move to dismiss Mrs. Toth's claim, the District Court submitted to the jury only her husband's claim for damages and the written form on which the jury recorded its verdict indicates that it considered only his claim. Whatever error was committed by the failure to strike the wife's claim did not affect the substantial rights of the parties and was harmless. Rule 61, Fed.R. Civ.P.

The judgment of the District Court is affirmed.

PHILLIPS and EDWARDS, Circuit Judges (concurring).

We concur in the result reached in Judge McCree's opinion. Inspection of the physical evidence and reading of the expert testimony which was submitted

---

2. Much of the expert testimony for both sides concerned variations in the thickness of the wall of the pot's ceramic bowl from .058 to .120 inches. Appellee argues that this *variation* somehow subjected the thinner portions of the wall to greater stress than would have otherwise been the case and thus caused the vessel's failure. He does not contend that the wall would have been too thin to withstand normal stresses (other than bumping) if it had not also been subjected to stresses arising from variations in its thickness. Moreover, it is undisputed that the thickness of the wall in the area of the initial crack (which was subjected to the greatest amount of mechanical stress when the pot was lifted because of its proximity to the handle) was .080 inches and that appellant's quality control standards specify a minimum thickness of only .045 inches. No other evidence of a minimum dimension legally appropriate in this regard was introduced.

The experts of both parties agreed that variation in thickness affects the rate at which heat flows through ceramic material. It is undisputed that this rate is inversely proportional to thickness and that, consequently, it would be the *thicker* portions of the vessel's wall that would be subjected to greater thermal stress of this type instead of the thinner portions.

The testimony of appellee's witness is insufficient to support a finding of any other undesirable effect resulting from the variation of the bowl's thickness.

Q. Now, sir, you have indicated that there was this variance in thickness of merely 100 percent from one side of the coffee percolator to the other. What effect would this have on the internal stress of this object as a whole?

A. Well, if anybody, of course, there are internal stresses that are not completely removed by the healing process to which it is subjected in manufacture and when the stresses, could be a despairity [sic] in stresses between the very thin side and the very thicker side in addition to internal stresses to something like a thermal stress such as would be present when filled with coffee that is just below the boiling point I presume, the thin side would obviously transmit heat more rapidly than the thicker side and this would tend to magnify the unbalance of stresses that might be present at this point. Record at 30–31.

Insofar as we can determine, he postulated the existence of inherent "stresses" in the ceramic material from which the pot's bowl was made and which the manufacturing process did not completely remove. He gave no explanation of the nature of these stresses and no evidence of their actual existence was introduced during the trial. To allow recovery on the basis of such a vaguely articulated and completely unsubstantiated theory would be inconsistent with traditional notions of the quantum of evidence sufficient to permit a case to go to the jury.

We would find, therefore, that there is insufficient evidence in the record to permit the jury to conclude that variations in the thickness of the wall constituted a defect. Because of other evidence, discussed *supra*, from which the jury could have found a different defect, it is not necessary for us to make this determination. Appellant did not request the trial judge to require the jury to return a special verdict identifying the defect, if any, under Fed.R.Civ.P. 49(a) and it cannot complain on appeal of its failure to do so.

at trial convinces us that the jury could have concluded from the thinness of the pot at the point of greatest stress that this coffee pot had been defectively manufactured.