FRIEDMAN ET AL., APPELLANTS, *v.* GENERAL MOTORS
CORPORATION ET AL., APPELLEES.

(No. 32198—Decided July 12, 1974.)

*Messrs. Spangenberg, Shibley, Traci, Lancione & Markus* and *Mr. Thomas A. Heffernan,* for appellees.

*Messrs. Weston, Hurd, Fallon, Sullivan & Paisley* and *Mr. Thomas P. Curran,* for appellants.

McMonagle, J. This action involves product liability. The plaintiffs, Morton Friedman, his wife and two minor children, and the Maryland Casualty Company brought the action against the General Motors Corporation and A. D. Pelunis, Inc., for damages suffered because of an allegedly defective connection in the ignition and automatic transmission system of the family automobile.

The Complaint alleged that the Friedman family was in their car which was parked at a gasoline station when Morton Friedman attempted to start it, believing the gears to be in a neutral position. It was claimed, however, that the transmission gears were actually in a "drive" position,

and when he turned the ignition switch the car leaped forward and "ran wild" colliding with another car and a light pole before coming to rest at the base of a sign. The car was substantially damaged and all of the Friedmans were injured.

Upon the motion of the plaintiffs, the court dismissed A. D. Pelunis, Inc. and after both parties had presented their evidence, it granted the motion of General Motors for a dismissal as to it. In their appeal, the plaintiffs assign the trial court's directing of the verdict as error.

In product liability cases involving defects in automobiles, the plaintiff's burden of proof consists of alleging and proving, by a preponderance of the evidence, that:

(1) there was, in fact, a defect in the product manufactured and sold by the defendant;

(2) such defect existed at the time the product left the hands of the defendant; and

(3) the defect was the direct and proximate cause of the plaintiff's injuries or loss.

*State Auto Mutual Ins. Co.* v. *Chrysler Corp.* (1973), 36 Ohio St. 2d 151; *Lonzrick* v. *Republic Steel Corp.* (1966), 6 Ohio St. 2d 227.

The plaintiffs' theory of recovery was stated in their counsel's opening remarks, as follows:

"It is our position that the neutral safety switch in this autmobile constitutes a defect in the automobile, and the nature of the defect was such that it allowed the car to start in drive."

There was considerable testimony as to the condition of the vehicle after the accident. The car was a 1965 Oldsmobile Toronado with front wheel drive, manufactured by defendant General Motors Corporation. This testimony was to the effect that the front end was damaged and the transmission connecting rods were crushed against the fire wall. The transmission gears are in a case mounted under the hood at the rear of the engine and to the front of the fire wall. The driver brings about a change in the position of the transmission gears by his movement of the shift lever, which is connected with the transmission gears by means

of various parts and their linkages. The shift indicator needle which is supposed to tell the driver the position of the transmission gears is mounted where it is visible to the driver and it moves in concert with the movement of the shift lever. However, the indicator does not control the transmission gears, and it is itself adjustable separately from any adjustment in or change in position of the transmission gears. It is possible for the indicator needle to be moved so that it shows one position although the transmission gears and their connected parts are actually in a different position. The position of the shift indicator needle either after, or at the time of the occurrence would not be dispositive of the issues presented in this action.

If a car is properly constructed, including the proper connection, alignment and adjustment of the various parts and electical contacts, the engine cannot be started by turning the ignition switch unless the transmission gears are themselves in either the "park" or "neutral" position regardless of what is shown by the shift indicator needle. A "neutral safety switch" is mounted on the steering column and its function is to control the electrical impulses required to be transmitted to the engine before it can be started. This also is adjustable. When it is properly connected, aligned and adjusted, it will permit electrical impulses to be transmitted, upon the turning of the ignition switch, only when the transmission gears are in either "park" or "neutral." If it permits electrical impulses to be sent to the engine when the transmission gears are in either the "reverse," "drive," "super," or "low" gear position (regardless of the position shown by the shift indicator needle), the car is defective.

It was the claim of the plaintiffs that the subject car was defective when it left the factory in that the "neutral safety switch" was connected improperly, or maladjusted so that the engine could start when the ignition switch was turned on and the transmission gears were in a "drive" position. This fact had never come to the attention of the plaintiffs before the occurrence of the events described in the Complaint because the engine had always been started

when the indicator had shown "park" and the transmission gears were in the "park" position.

General Motors Corporation denied the contentions of the plaintiffs as to the defective condition of the car and the cause of the accident. It contended that there is no evidence from which the jury could find that a defective condition was present in the car. There was no direct evidence that the "neutral safety switch" was improperly connected or that a malaligment existed between it and the transmission gears.

Under the law of Ohio, the jury has the right to make any logical and immediate inferences from facts which have been established by the evidence. An inference is a reasonable deduction of a fact which logically follows from other facts established by the evidence.

The plaintiffs' evidence, if believed, was that the engine started when the transmission gears were in a "drive" position. From this testimony, the jury had the right to infer that the "neutral safety switch" was either improperly connected or malaligned and that the car was, therefore, defective.

There is testimony in the record that when the ignition switch was turned on, the engine immediately started, and the car shot forward without the shift lever being moved from the position that it was in before the ignition switch was operated. Testimony was also introduced that General Motors selected and made the switch settings at the time the car was manufactured, and that no changes or adjustments were made in it from the time it left the factory until the occurrence that is the subject of this action.

We hold that the jury had the right to infer, if it found the facts to be as testified to by the plaintiffs, that the "neutral safety switch" was either improperly connected or malaligned by General Motors when it built the car and that the car was, therefore, defective in a respect which was the proximate cause of injuries and damages to the plaintiffs. The jury was also privileged to find that no improper connection or malfunction existed and that the car was not defective. Upon such a finding, the jury would be obliged to render a verdict for the defendant.

The trial court, therefore, erred to the substantial prejudice of the plaintiffs in granting the motion of General Motors Corporation to dismiss the action. The judgment of the trial court is reversed and this cause is remanded for further proceedings according to law.

*Judgment reversed.*

MANOS, C. J., and WASSERMAN, J., concur.

WASSERMAN, J., retired, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.

McMONAGLE, J., of the Court of Common Pleas of Cuyahoga County, sitting by assignment in the Eighth Appellate District.