UNITED TELEPHONE COMPANY OF OHIO, Appellee and Cross–Appellant,

v.

WILLIAMS EXCAVATING, INC. et al., Appellants and Cross–Appellees; Bischoff & Associates, Inc., Appellee and Cross–Appellee.

[Cite as *United Tel. Co. of Ohio v. Williams Excavating, Inc.* (1997), 125 Ohio App.3d 135.]

Court of Appeals of Ohio,
Third District, Allen County.

Decided Dec. 31, 1997.

136

*Baran, Piper, Trakowsky, Fitzgerald & Theis Co., L.P.A., Bruce A. Curry* and *Michael M. Heimlich,* for appellee and cross-appellant, United Telephone Company of Ohio.

*Schottenstein, Zox & Dunn, Roger L. Sabo* and *Robert Nichols; Lindhorst & Dreidame, Jay R. Langenbahn* and *Robert G. Jutze; Daley, Balyeat, Balyeat & Leahy* and *Robert Balyeat,* for appellants and cross-appellees Williams Excavating, Inc. et al.

*Reminger & Reminger Co., L.P.A.,* and *Mark E. Defossez,* for appellant and cross-appellee Southwest Licking Community Water and Sewer District.

*Lane, Alton & Horst* and *Jeffrey Hutson,* for appellee and cross-appellee Bischoff and Associates, Inc.

SHAW, Judge.

This opinion consolidates the two appeals by appellant Williams Excavating, Inc. ("Williams") and appellant Southwest Licking Community Water and Sewer District ("Southwest"), which arise from three separate sewer construction projects that are the subject of various claims filed by the parties to the instant appellate action. In addition, the cross-appeal by United Telephone Company of Ohio ("United Telephone") is now before this court.

Southwest is an Ohio public authority which has jurisdiction over three townships near Pataskala, Ohio, in Licking County. In 1990, Southwest entered into a written contract with Bischoff & Associates, Inc. ("Bischoff") for it to provide professional engineering services in connection with the following three sanitary sewer improvement projects: Beechwood Trails Sanitary Sewer Improvements Contracts A and B ("Beechwood Trails"), Summit Station Sanitary Sewer Improvements Phase 2A ("Summit Station"), and U.S. Route 40 Environs Contracts A and B ("Environs"). The work included preparation of the project plans for the installation of sewer lines that would serve the three project areas.

These plans included certain underground utilities present within the construction sites.

In September 1992, Williams was awarded the Beechwood Trails construction project by competitive bidding in the amount of more than $3.6 million. Hence, Williams entered into a contract with Southwest for the project. Williams was also subsequently awarded the contracts for the Summit Station and Environs projects, the approximate amounts of $883,000 and $1.7 million, respectively.

The record shows that when Williams began to excavate the Beechwood Trails site in November 1992, Williams encountered underground telephone lines in the proposed sewer line path. No such lines were shown on the bid set of plans. Although telephone line locations were designated on the plans to the other two projects, the evidence shows that Williams also encountered underground lines not as marked on the plans during excavation for the proposed sewer lines. As a consequence, it was necessary for underground telephone lines in certain areas to be relocated, thereby delaying the projects. Williams was unable to complete its work as originally scheduled.

This case commenced when United Telephone brought suit against Williams alleging that Williams negligently cut its underground telephone lines during excavation activities in the Beechwood Trails subdivision. Pertinent to this appeal, Williams's second amended counterclaim asserts various negligence claims for violations of R.C. 153.64. Specifically, Williams alleged that United Telephone negligently mismarked or failed to mark the location of its underground telephone lines at all three construction sites in issue. Williams also alleged that United Telephone negligently failed to inform or misinformed Southwest as to the existence and location of its underground utility lines, resulting in plans and specifications which were false and misleading. Williams sought to recover damages due to project delays and for the extra materials and work performed.

Williams also filed a third-party complaint against Southwest. In its complaint, Williams alleged that Southwest negligently failed to mark or mismarked the existence and location of United Telephone's underground lines on the bid plans. Williams also asserted unjust enrichment and breach of contract against Southwest. In its claims, Williams sought to recover damages resulting from project delays and for the extra materials and work required.

Southwest, in turn, filed a fourth-party complaint against Bischoff asserting a right to indemnity or contribution from Bischoff. Bischoff then filed a cross-claim against Williams seeking indemnification if it should be liable to Southwest.

In the subsequent jury trial, the trial court directed a verdict against Williams on its claims against Southwest relative to compliance with R.C. 153.64. Like-

wise, the trial court directed a verdict against Southwest on all of its claims against Bischoff except for the indemnity claim. On Williams's remaining claims against Southwest for breach of contract and unjust enrichment, which the trial court allowed to go to the jury, Williams was awarded $6,299 in breach-of-contract damages. With respect to United Telephone's claims against Williams, the jury awarded United Telephone $18,814.30 in damages. As to the counterclaim against United Telephone, the jury found against Williams. By agreement of the parties, the trial court decided Southwest's remaining claim for indemnification of legal fees and costs from Bischoff. In its entry dated January 15, 1997, the trial court denied Southwest's claim under the parties' contract.

Williams filed a motion for a new trial as to both the judgment in favor of Southwest and the judgment in favor of United Telephone. Williams's motion was overruled by the trial court, and this appeal followed.

On appeal, Williams challenges the trial court's dismissal of its claims against Southwest based on R.C. 153.64 and also the jury instructions on the remaining breach-of-contract claim against Southwest and on the negligence claims against United Telephone. United Telephone filed a cross-appeal challenging only the trial court's denial of its motion for summary judgment as to Williams's claims. In the appeal of Southwest, the only assignment of error raised concerns its claim for indemnification from Bischoff.

In this opinion, we will first discuss the merits of Williams's assignments of error. Because the first, second, fifth, and sixth assignments of error challenge either the trial court's dismissal of Williams's claims against Southwest or the court's corresponding instructions to the jury on this matter, we will treat them together. They provide as follows:

"Whether the lower court erred in reversing its prior decision that the Southwest Water and Sewer District has complied, as a matter of law, with its statutory duties imposed as to marking and location of underground utility facilities.

"Whether the lower court erred in ruling as it did concerning the obligations of the owner of a construction project as well as the obligations of the owner of a public underground utility facility on a construction project.[1]

"Whether the lower court erred in instructing the jury that the owner had complied with the requirements of the Ohio statute as to markings of underground utility facilities.

---

1. In the brief, Williams addresses the issue of the utility owner's obligations in the context of its argument for assignment of error number three.

"Whether the lower court erred in failing to determine that a question of fact existed for the jury to determine as to whether utility lines were properly marked or relocated."

Essentially, Williams argues that whether Southwest complied with the statutory obligations imposed by R.C. 153.64 is a question of fact and that Williams presented sufficient probative evidence to overcome a motion for a directed verdict and get the issue before the jury. To that end, Williams claims that Southwest cannot argue that it met its legal duty to ascertain the location of utility lines on construction plans simply because the utility owner failed to respond to a request for underground utility line locations. In addition, Williams argues that there were improperly marked utility lines on the plans and that Southwest had a legal duty to relocate utilities that were in conflict.

The standards for a directed verdict were recently set forth in *Wagner v. Roche Laboratories* (1996), 77 Ohio St.3d 116, 119–120, 671 N.E.2d 252, 255, wherein the Ohio Supreme Court quoted from its opinion in *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 284–285, 21 O.O.3d 177, 178–179, 423 N.E.2d 467, 469–470:

" 'The law in Ohio regarding directed verdicts is well formulated. In addition to Civ.R. 50(A), it is well established that the court must neither consider the weight of the evidence nor the credibility of the witnesses in disposing of a directed verdict motion. * * * Thus, "if there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied. " *Hawkins v. Ivy* (1977), 50 Ohio St.2d 114, 115 [4 O.O.3d 243, 244, 363 N.E.2d 367, 368].

" * * *

" 'When a motion for a directed verdict is entered, what is being tested is a question of law; that is, the legal sufficiency of the evidence to take the case to the jury. This does not involve weighing the evidence or trying the credibility of witnesses. * * * The "reasonable minds" test of Civ.R. 50(A)(4) calls upon the court only to determine whether there exists any evidence of substantial probative value in support of [the claims of the party against whom the motion is directed]. * * * A motion for a directed verdict raises a question of law because it examines the materiality of the evidence, as opposed to the conclusions to be drawn from the evidence.' *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 68–69, 23 O.O.3d 115, 116–117, 430 N.E.2d 935, 938." (Citations omitted.)

In this case, Williams's contract with Southwest in all three public improvement projects sets forth the following section pertinent to the issues:

*"Provision of Law* Each and every provision of law and clause required by law to be inserted in this Contract shall be deemed to be inserted herein and this Contract shall be read and enforced as though it were included herein and if through mistakes or otherwise any such provision is not inserted or is not correctly inserted, then upon the application of either party hereto, the Contract, shall forthwith be physically amended to make such insertion."

R.C. 153.64 speaks specifically to the protection of underground utility facilities during construction of public improvements and sets forth various rights and responsibilities among public authorities, contractors, and underground utility owners. This statute states in relevant part:

"(B) In any public improvement which may involve underground utility facilities, the public authority, prior to preparing plans and specifications, shall contact the registered underground utility protection services * * * for the existence and location of all underground utility facilities within the construction area. The public authority shall include, in the plans and specifications for such improvement, the identity and location of the existing underground utility facilities located in the construction area as provided to the public authority by the owner of the underground utility facility * * *. Any anticipated temporary or permanent relocation of underground utility facilities deemed necessary by the public authority shall be negotiated or arranged by the public authority with the owners of the underground utility facilities prior to the start of construction. * * * The public authority, within ten calendar days after award of a contract for a public improvement, shall notify in writing all owners of underground utility facilities known to be located in the construction area of the public improvement of the name and address of the contractor to whom the contract for the public improvement was awarded."

The trial record in the instant case reveals that there was a contract between Southwest and Bischoff making Bischoff Southwest's project engineer. According to Robert Bailey, Southwest's Chairman of the Board of Trustees, Bischoff was expected to prepare the plans and specifications and then to administer the contract between Southwest and Williams as Southwest's representative. Thus, it follows that Bischoff would have been the one expected to tend to the R.C. 153.64 obligations for the projects. Moreover, Edward Bischoff of the engineering firm agrees that in representing Southwest, its function was to contact Ohio's Utility Protection Service ("OUPS") during the planning.

In any event, it is Bischoff's general practice to contact OUPS about potential utility companies in a project area during the design phase of the plans. Moreover, testimony given by Bischoff's project manager was that OUPS would provide them with the names of the member utility companies servicing a particular project area. United Telephone was one of the members of OUPS.

With regard to the Beechwood Trails project, Bischoff's records indicate that a fax, Trial Exhibit F–1, was sent to Paul Gieseck at United Telephone, which provides as follows:

"We are designing sanitary sewer for all existing homes <u>within</u> Boundary Area."

That boundary area of Beechwood Trails was outlined on a public map. However, the fax contained no specific request for line locations. According to the testimony of Paul Gieseck at trial, he admitted that he had received this notification, but the company's records do not reflect evidence that it ever transmitted the location of its underground telephone lines to Bischoff. Bischoff did not receive any response and apparently claims to have concluded from this fact alone that there were no such lines in the development. Indeed, Southwest's engineer concedes that there were no underground telephone utility lines shown on the Beechwood Trails plans for bidding.

However, it is our view that from these facts one could reasonably infer that Southwest's representative, Bischoff, knew or should have known that there were United Telephone lines in the Beechwood Trails area to be concerned with in designing the project. This is particularly true where there were between one thousand and two thousand established homes in the subdivision with no above-ground phone lines and no evidence to suggest that Bischoff believed another telephone company served the particular area. Additionally, as indicated by Edward Bischoff's testimony, Bischoff was cognizant of above-ground utility pedestals, despite the fact that he maintains that the existence of some pedestals in the area would not necessarily indicate that there were underground telephone lines in that area that should be shown on the contract plans.

Furthermore, the testimony regarding the procedure which Bischoff used on the Summit Station project the following year clearly contrasts with the foregoing. The notice Bischoff sent to United Telephone stated: "Paul, Please locate Burried [*sic*] Utilities on plans and return to our new address[.]" Apparently, in that instance, a set of plans was provided as opposed to merely outlining an area on a public map. The testimony of Bischoff's project manager also indicates that Bischoff utilized a plan review checklist in that project identifying the utility companies to which plans had been sent. Similarly, there was testimony from a construction engineer who had worked for a state department that it was the normal procedure as part of a public improvement project to send a preliminary set of plans to the various utility companies to locate the existence of their utilities on the plans. Then their practice was to send a final set of plans to those utility companies so that any anticipated relocation of underground utility facilities could be undertaken prior to the start of bidding.

In connection with both the Summit Station and Environs projects, testimony given at trial reveals that United Telephone had returned plans to Bischoff that indicated with marker existing underground telephone lines on these sites. Bischoff relied exclusively upon this information to show on the bid plans the location of existing underground telephone lines. However, as conceded by the testimony, there were areas where the lines were incorrectly shown on those plans. For example, there were underground phone lines shown on the west side of Summit Road, but it turned out that some of those lines actually crossed over Summit Road and were either on the east side or crossing back and forth from east to west. Since the sewer line was to be located on the east side of Summit Road, the telephone lines that were in conflict had to be relocated after the start of construction.

Upon a thorough review of the record, we find that the trial court erred in ruling as a matter of law that Southwest complied with its statutory duties under R.C. 153.64 and thereby directing a verdict against Williams on that issue. There was substantial, competent evidence produced upon which reasonable minds might reach different conclusions. Therefore, this issue should have been submitted to the jury. In addition, our conclusion that Southwest was not entitled to a directed verdict necessitates the conclusion that Bischoff was also not entitled to a directed verdict. Accordingly, Williams's first, second, fifth, and sixth assignments of error have merit and are therefore sustained.

We next consider Williams's seventh and ninth assignments of error, which state as follows:

"Whether the Lower Court failed to instruct the jury on liability for delays caused by Southwest Licking Community Water & Sewer District.

"Whether the lower court erred in failing to properly instruct the jury that a damage for delay clause could be overridden by the conduct of the parties and the failure to provide site access."

Williams initially takes issue with the trial court's instructing the jury that Southwest had complied with R.C. 153.64. Obviously, having already decided that this was a question for the jury to determine, we must likewise conclude that the trial court erred in so instructing the jury. Moreover, it follows that the erroneous instruction prejudiced Williams in this case. "In examining errors in a jury instruction, a reviewing court must consider the jury charge as a whole and 'must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantive rights.'" *Kokitka v. Ford Motor Co.* (1995), 73 Ohio St.3d 89, 93, 652 N.E.2d 671, 674, quoting *Becker v. Lake Cty. Mem. Hosp. W.* (1990), 53 Ohio St.3d 202, 208, 560 N.E.2d 165, 170–171. In the present case, the erroneous instruction would, in effect, have

made it more likely that the jury assumed that Southwest should not have to compensate Williams on its breach-of-contract claim.

Williams also takes issue with the trial court's instructions to the jury on the "exculpatory language" in the contract documents with Southwest. The pertinent jury instructions given verbally and submitted in writing to the jury in this case are as follows:

"Southwest as a public owner was required to award the contract to the lowest bidder whose bid proposal is responsible to the invitation to bid and contract specifications. The responsiveness of the bid proposal is determined at the time of the bid opening. If the bid proposal is accepted by the public owner, the construction contract is then based upon what was in the bid documents and the parties to the contract are then bound to its terms. The terms and conditions of the contract include the proposal documents, the construction plans and specifications, and applicable Ohio law. The contractor is entitled to rely on both Ohio statutes and bid documents in formulating its bid. In this case, the laws of Ohio have imposed a specific obligation upon owners of construction business.

"If a contract is required to contain certain terms, and change to the contract occur[s] after bid opening on the contract is not as represented, then the public owner is required to compensate the contractor if the changes result in increased costs to the contractor. Williams claims the utility lines were not represented by the plans.

"If you find that the terms of the contract placed the financial risk of misplaced lines on Williams, then you will find in favor of Southwest and against Williams on Williams' breach of contract claim."

■ As a preliminary matter, we note that the particular instruction to the jury on Williams's recovery is unclear. The jury is entitled to receive from the court an instruction that constitutes a plain, distinct, and unambiguous statement of the law as applicable to the case. *Marshall v. Gibson* (1985), 19 Ohio St.3d 10, 12, 19 OBR 8, 10, 482 N.E.2d 583, 585.

■ For example, in addressing Williams's specific contention, we note that it has been held that a state agency may not, by contract or otherwise, avoid the statutory conditions imposed by the General Assembly for the construction of public improvements. *Conti Corp. v. Ohio Dept. of Adm. Serv.* (1993), 90 Ohio App.3d 462, 466–467, 629 N.E.2d 1073, 1075–1077. Under R.C. 153.64(B), the public authority is required to contact the owners of the underground utility facilities for the location of existing underground utilities within the construction area and then include the same on the project plans and specifications. Additionally, according to Section (D):

"If the public authority fails to comply with the requirements of division (B) of this section, the contractor to whom the work is awarded or its subcontractor complies with the requirements of division (C) of this section, and the contractor or its subcontractor encounters underground utility facilities in the construction area that would have been shown on the plans and specifications for such improvement had the registered underground utility protection service * * * been contacted, then the contractor, upon notification to the public authority, is entitled to an increase to the contract price for itself or its subcontractor for any additional work that must be undertaken or additional time that will be required and is entitled to an extension of the completion date of the contract for the period of time of any delays to the construction of the public improvement."

Thus, while it is within the province of the trial court to give the jury pertinent and proper instructions declaring the legal effect of the terms of the contract as a matter of law, we find that the trial court gave the jury misleading instructions in the context of this case. Here, the trial court did instruct the jury that Williams was entitled to rely on both Ohio statutes and the bid documents in formulating its bid. However, the court then went on to instruct the jury that if it found that the terms of the contract placed the financial risk of misplaced lines on Williams, then it must return a verdict in favor of Southwest. Consequently, R.C. 153.64 would have no meaning if, as the trial court instructed, the public authority can circumvent its requirements by virtue of a provision in the contract stating that the contractor is responsible for determining the exact location of utilities whether or not those utilities appear on the plans and specifications. Because the jury instructions as given did not instruct the jurors on the effect of the contract if they found that Southwest failed to comply with the specific obligations imposed upon it under R.C. 153.64, we find prejudicial error in the instant case.

Admittedly, in this case, the trial court did instruct the jury that if there is a conflict between the contract provisions and R.C. 153.64, the statute governs.[2] Nonetheless, we do not find that this adequately cured the erroneous instruction. Particularly, in view of the fact that the trial court instructed the jury that there was compliance with the statute. That was a question of fact for the jury to resolve. The court did not instruct the jury as to the legal effect of the terms of the contract. Rather, it appears that the trial court let the jury decide the

---

2. The charge to the jury instructed as follows:
"Contract Language Affected by Statute
"The contract between Williams and Southwest contains a provision stating that the contractor is responsible for determining the exact location of utilities whether or not those utilities appear on the plans and specifications. However, you are instructed that if there is a conflict between the specifications and the statute, the statute governs. Specifically, you are instructed that the statute prohibits an owner from including a [sic] contract, any terms or condition which change the requirements of the statute."

question of law whether the contract terms are ambiguous. That error requires reversal.

Further, we are mindful that the jury did return a breach-of-contract verdict of $6,299 against Southwest. However, given the nature of the erroneous jury instructions and the evidence presented in the trial of this case, we find that the erroneous jury instructions, taken as a whole, did mislead the jury in a matter materially affecting Williams's substantial rights. Accordingly, we sustain these assignments of error.

Williams also sets forth the following assignment of error with respect to the jury instructions given by the trial court:

"Whether the lower court [erred] in failing to instruct the jury on the amount of damages that could be found to the Williams Excavating Co."

Williams claims that the trial court failed to properly instruct the jury on the basis on which damages could be assessed against Southwest for breach of contract. Specifically, Williams requested separate instructions on damages for loss of efficiency, idle labor and equipment, ongoing job site overhead, and home office overhead.

█ " 'Ordinarily, requested instructions should be given if they are correct statements of the law applicable to the facts in the case, and reasonable minds might reach the conclusion sought by the instructions.' " *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828, 832, quoting Markus & Palmer, Trial Handbook for Ohio Lawyers (3 Ed.1991) 860, Section 36:2.

In the case before us, it seems that the requested jury instructions on contract damages were not given by the trial court because it instructed the jury in a manner which withdrew from the jury's consideration the issues to which the proffered instructions pertain. We have sustained assignments of error seven and nine finding error of the trial court in so limiting its instructions. Each proffered instruction is a pertinent, correct statement of law and should have been given. Accordingly, Williams's eighth assignment of error is sustained.

Turning to Williams's claims against United Telephone, Williams raises the following two assignments of error:

"Whether the lower court erred in ruling as it did that, while a sufficient nexus occurred for which damages could be recovered against a public utility for misrepresentation, yet ruling that physical damage had to be shown.

"Whether the Lower Court erroneously instructed the jury on economic loss against United Telephone Company of Ohio."

In support of these assignments of error, Williams asserts that the requirements of R.C. 153.64 made Williams a member of a limited class whose reliance

upon a utility's representation was specifically foreseen. For support, Williams relies on the Ohio Supreme Court decision in *Haddon View Invest. Co. v. Coopers & Lybrand* (1982), 70 Ohio St.2d 154, 24 O.O.3d 268, 436 N.E.2d 212. The court held in *Haddon View,* at the syllabus, that "[a]n accountant may be held liable by a third party for professional negligence when that third party is a member of a limited class whose reliance on the accountant's representation is specifically foreseen." Accordingly, Williams claims that there is a nexus here that can serve as a substitute for contractual privity, and therefore the trial court erroneously instructed the jury that Williams had to prove that the economic damages sought from United Telephone arose from tangible physical injury to persons or from tangible property damage in order to recover such losses.

It is clear in the instant case that the trial court applied the rule announced in *Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.* (1995), 73 Ohio St.3d 609, 653 N.E.2d 661, to instruct the jury on the economic damages sought by Williams. In *Queen City Terminals,* the Ohio Supreme Court declared:

"[I]n order to recover indirect economic damages in a negligence action, the plaintiff must prove that the indirect economic damages arose from tangible physical injury to persons or from tangible property damage. Indirect economic damages that do not arise from tangible physical injury to persons or from tangible property may only be recovered in contract." *Id.* at 615, 653 N.E.2d at 667.

Specifically, the issue presented on appeal to the court in that case was "whether indirect economic losses are recoverable in tort when a physical injury or other direct property damage has also been sustained." In deciding this issue, the court recognized the general rule that "in the absence of privity of contract between two disputing parties * * * 'there is no * * * duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things.'" *Id.* at 615, 653 N.E.2d at 667, quoting *Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp. Assn.* (1990), 54 Ohio St.3d 1, 3, 560 N.E.2d 206, 208, quoting Prosser & Keeton, Law of Torts (5 Ed.1984) 657, Section 92.

Thus, absent personal injury or property damage in the present case, *Queen City Terminals* is not dispositive of the trial court's instruction on economic damages. We must then look to the analysis given the privity-of-contract requirement by the Ohio Supreme Court.

In *Floor Craft, supra,* the court refused to allow tort recovery for economic damages in an action brought by a contractor against an architectural firm which was allegedly negligent in drafting plans and specifications in a construction project absent privity of contract between them. The relevant parties in that case were the architects, the flooring contractor, and the hospital. Pursuant to

its contract with the hospital, the contractor was responsible for the installation of the flooring. The architects also had a contract with the hospital, and in accordance with it, prepared the plans and specifications of the flooring installation. There was no direct contractual relationship between the contractor and the architect. In performing their duty to the hospital, the architects allegedly specified flooring and sealant that was incompatible with the construction methods utilized in the project, which caused the contractor to expend moneys for additional work to correct the later discovered problem with the flooring. The contractor then sued the architects for damage.

In defining and limiting liability in the area of economic loss, the court explained:

"The law of torts is well equipped to offer redress for losses suffered by reason of a 'breach of some duty imposed by law to protect the broad interests of social policy.' (Citations omitted.) Tort law is not designed, however, to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. That type of compensation necessitates an analysis of the damages which were within the contemplation of the parties when framing their agreement. It remains the particular province of the law of contracts. * * *

"The controlling policy consideration underlying tort law is the safety of persons and property—the protection of persons and property from losses resulting from injury. The controlling policy consideration underlying the law of contracts is the protection of expectations bargained for. If that distinction is kept in mind, the damages claimed in a particular case may more readily be classified between claims for injuries to persons or property on the one hand and economic losses on the other.

"Therefore, applying [Section 552 of the Restatement of Torts, which describes the elements of negligent misrepresentation,] in this context will encompass liability that is otherwise best suited for contract negotiation and assignment." *Floor Craft* at 7, 560 N.E.2d at 211.

Moreover, the court reasoned that barring tort recovery when the losses are attributable to a contract is necessary "to hold parties to their contracts," despite the absence of privity between the contractor and the architects. *Id.* at 7, 560 N.E.2d at 211; See *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.* (1997), 78 Ohio St.3d 353, 367, 678 N.E.2d 519, 530. Floor Craft specifically contracted with the hospital to hold it and not the architects liable for any economic damages arising from the architects' plans and specifications. Indeed, the court pronounced that absent privity of contract or a substitute therefor, no cause of action exists in tort to recover economic damages against design professionals involved in drafting plans and specifications. *Floor Craft*, 54 Ohio St.3d at 8, 560 N.E.2d 206.

With regard to privity, the Ohio Supreme Court has recently explained in *Enviresponse, supra,* at 365–366, 678 N.E.2d at 529:

"Privity, or its substitute, is not a tort; it serves only to identify an interest or establish a relationship necessary to allow for the bringing of a tort action for purely economic damages. Regardless of whether the threshold requirement for privity is met, or even justified, there can be no recovery where a necessary element to the tort itself is found to be missing."

■ Here, we are not faced with a situation where both tort and contract principles are invoked. Rather, Williams's claims against United Telephone are for recovery under one of the various tort theories stemming from United Telephone's failure to fully comply with the requirements of R.C. 153.64. In sum, the issue presented here is whether there exists a relationship between the parties to allow for the bringing of a tort action under any theory for purely economic damages. Thus, there is no need at this time for us to examine the various tort theories stemming from R.C. 153.64 submitted to the jury, since Williams can recover damages only once regardless of the number of theories advanced. Consequently, because the trial court instructed the jury that Williams had to prove tangible physical injury or property damage to recover economic damages from United Telephone, we find that the instruction to the jury was erroneous.

Accordingly, for the reasons stated herein, Williams's third and fourth assignments of error are sustained.

For its last assignment of error, Williams asserts:

"Whether the lower court erred in failing to grant Williams Excavating, Inc.'s motion for a new trial."

In this assignment of error, Williams contends that the trial court erred in denying its motion for a new trial based on the foregoing errors assigned and argued. As we have already addressed the errors being raised herein, we consequently find that this assignment of error is moot.

Turning to the cross-appeal filed by United Telephone, it raises three assignments of error. United Telephone's first cross-assignment of error asserts:

"The trial court erred in denying United Telephone Company of Ohio's motion for summary judgment by ruling that an issue of fact existed in this case as to whether or not sufficient nexus exists to substitute for privity, pursuant to the rule of law in Ohio that absent privity, an aggrieved party may not recover for damages for economic loss absent personal injury or damage to tangible property."

United Telephone argues that the economic-loss rule bars tort recovery in the present case. This issue was considered in our resolution of the third and fourth assignments of error of Williams; and, therefore, based on the preceding analysis, the first cross-assignment of error is overruled.

For its second and third cross-assignments of error, United Telephone asserts:

"The trial court erred as a matter of law in denying United Telephone Company of Ohio's motion for summary judgment upon the grounds that O.R.C. 153.64 creates and [sic] independent cause of action with respect to those obligations such statute imposes upon public utilities in Ohio.

"The trial court erred as a matter of law in denying United Telephone Company of Ohio's motion for summary judgment by, in effect, ruling that an independent cause of action, including but not limited to a cause of action based upon alleged negligent misrepresentation and/or a cause of action based upon alleged negligence, against a public utility in Ohio may be predicated solely upon the alleged negligent performance of duties required of it by O.R.C. 153.64."

■ Within these assignments of error, United Telephone argues that R.C. 153.64 does not provide Williams a civil remedy for violations of the statute and, consequently, bars any common-law tort action against United Telephone based upon the statute. We note, however, that R.C. 153.64(D) provides that "[e]xcept as noted in this division, this section does not affect rights between the contractor or its subcontractor and the owner of the underground utility facility for failure to mark or erroneously marking the utility lines."[3] Thus, it is clear that the statute permits Williams to maintain its tort claims based on the public utility's failure to fully comply with the duties set forth in R.C. 153.64(C).[4]

With respect to division (B), we recognize that R.C. 153.64(D) does specifically provide for recovery of damages from the public authority for failure to comply with the requirements of that division. However, the mere existence of statutory

---

**3.** R.C. 153.64(D) otherwise provides:

"[A]ny contractor or its subcontractor who complies with the requirements of division (C) of this section shall not be responsible to the owner of the underground utility facility if underground utility lines are encountered not as marked in accordance with the provisions of division (C) of this section by the owner of the underground utility facility, unless the contractor or its subcontractor has actual notice of the underground utility facility."

**4.** R.C. 153.64(C) specifies:

"The owner of the underground utility facility, within forty-eight hours, excluding Saturdays, Sundays, and legal holidays, after notice is received, shall stake, mark, or otherwise designate the location of the underground utility facilities in the construction area in such a manner as to indicate their course together with the approximate depth at which they were installed. The marking or locating shall be coordinated to stay approximately two days ahead of the planned construction."

remedies for a public authority's violation of division (B) does not, without more, operate to bar recognition of Williams's tort claims against United Telephone predicated on the duties embodied in that division. Further, in our judgment, allowing Williams to pursue a common-law tort action for violations of division (B) would foster the purpose of the statute to protect underground utility facilities during construction of public improvements. See R.C. 153.64. Of course, the applicable form of action to be pursued depends on the evidence to be introduced at trial.

Civ.R. 56(C) provides that summary judgment is proper when there remains no genuine issue of material fact to be litigated and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 617 N.E.2d 1129. Consequently, under Civ.R. 56(C), there are genuine issues of material fact as to whether United Telephone complied with the dictates of R.C. 153.64. Therefore, United Telephone's second and third cross-assignments of error are overruled.

Accordingly, for the reasons stated herein, we affirm the judgment of the trial court which denied United Telephone's motion for summary judgment.

Lastly, we turn to the appeal by Southwest. For its sole assignment of error, Southwest asserts:

"The trial court erred in denying Southwest Licking Community Water & Sewer District's claim for legal fees."

In this assignment of error, Southwest argues that the plain language of the indemnification clause in its contract with Bischoff requires Bischoff to pay its legal defense costs. Pursuant to the contract language, Southwest maintains that Bischoff was obligated to do so because Southwest was made a party to this action for claims arising from the engineer's performance. Bischoff contends, however, that the contract does not require it to pay Southwest's legal costs by "reason of claims," but rather uses the phrase "by reason of negligence, errors or omissions." Thus, if Southwest's argument is accepted, Bischoff contends, it would have the effect of adding language to the contract that clearly does not exist.

Paragraph 5.9 of the subject agreement between these two parties provides as follows:

"ENGINEER shall indemnify and hold harmless the DISTRICT and each member of the Board of Trustees of the DISTRICT (and their heirs, executors, and administrators) who is made a party or who is threatened to be made a party to any litigation, action, suit, demand or proceeding, whether civil, criminal, investigative, administrative or other, by reason of the negligence, errors or omissions of the ENGINEER or any of ENGINEER'S employees, agents or

persons under its direction, and ENGINEER shall provide legal representation and pay the cost thereof and pay any claim or judgment obtained or growing out of said claims or liabilities."

It is axiomatic that the contract provision must be interpreted as a whole. In this context, we find that the contract language is susceptible of two conflicting but reasonable interpretations and is therefore ambiguous. See *Inland Refuse Transfer Co. v. Browning–Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 322, 15 OBR 448, 448–449, 474 N.E.2d 271, 272–273. We draw this conclusion because the clause "by reason of the negligence, errors or omissions of the engineer" does not contain the critical words "alleged or proven."

In interpreting the contract paragraph, the trial court determined that Bischoff was responsible only for indemnification by reason of its negligence, errors, or omissions, and therefore Bischoff could not be required to defend Southwest against groundless, false or fraudulent claims. Having directed a verdict in favor of Bischoff on the underlying claims, the court concluded that there were no "negligence, errors or omissions of the engineer" in this case. Consequently, the trial court denied Southwest's claim against Bischoff for legal fees.

Upon reviewing the indemnification clause as a whole, we find that the trial court reasonably interpreted it. However, because we have determined that the trial court improperly granted a directed verdict in Bischoff's favor, we must find that the trial court's ultimate ruling as to Southwest's claim for indemnification is erroneous. That claim will have to be redetermined based upon the outcome of the new trial. Therefore, to the extent indicated, Southwest's assignment of error is sustained.

In sum, we reverse the order of the trial court directing a verdict against Williams and Southwest and therefore grant a new trial on that basis. Due to erroneous instructions to the jury, we also reverse the jury verdict as to Williams's breach-of-contract claim against Southwest, as well as Williams's negligence claims against United Telephone, and remand for a new trial. However, the judgment of the trial court denying United Telephone's motion for summary judgment is affirmed. Finally, as to Southwest's appeal regarding indemnification from Bischoff, the judgment of the trial court is affirmed in part and reversed in part in accordance with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

THOMAS F. BRYANT and HADLEY, JJ., concur.