**COLUMBIA GAS OF OHIO, INC., Plaintiff,**

v.

**COLUMBUS ASPHALT PAVING, INC., Defendant; Reliant Services, L.L.C., Third–Party Defendant.**

Franklin County Municipal Court,
Columbus, Ohio.

No. 2004 CVF 031877.

Decided Oct. 31, 2005.

Daniel J. Igoe and Stephen L. Hebenstreit, for plaintiff.

Donald B. Leach Jr., and Priya J. Bathija, for defendant.

Matthew C. Krejel and John M. Hands, for third-party defendant Reliant Services, L.L.C.

DORRIAN, Judge.

## I. Summary of Complaint, Counterclaim and Third Party Complaint

### A. Columbia's Complaint against Columbus Asphalt Paving

{¶ 1} On August 10, 2004, Columbia Gas of Ohio ("Columbia") filed a complaint against Columbus Asphalt Paving ("CAP"). On October 5, 2004, Columbia filed an amended complaint against CAP. The complaint against CAP alleges:

Negligence: While performing underground excavations under contract with another party, CAP negligently damaged a gas pipeline owned by Columbia at 2041 Doren Avenue causing $940.65 in damages.

Negligence: While performing underground excavations under contract with another party, CAP negligently damaged a gas pipeline owned by Columbia at 3989 Elm Street causing $844.91 in damages.

Negligence: While performing underground excavations under contract with another party, CAP negligently damaged a gas pipeline owned by Columbia at 22 Indian Springs Road causing $5,107.91 in damages.

### B. CAP's Counterclaim against Columbia

{¶ 2} On September 13, 2004, CAP filed an answer to Columbia's complaint and a counterclaim against Columbia. On December 7, 2004, CAP filed an answer to amended complaint and an amended counterclaim. The amended counterclaim against Columbia alleges:

Negligence: Columbia Gas negligently failed to identify the location of underground gas lines at 22 Indian Springs Road, causing $6,139.74 in economic damages to CAP.

Breach of implied warranty: Columbia Gas impliedly warranted that the paint lines locating the underground gas lines were applied in a workmanlike quality at 22 Indian Springs Road.

### C. CAP's Third Party Complaint against Reliant

{¶ 3} On December 16, 2004, CAP filed a third-party complaint against third-party defendant Reliant Services, L.L.C. ("Reliant"). The third-party complaint alleges:

Negligence: Reliant negligently failed to properly mark the physical location of underground gas lines at 22 Indian Springs Road, causing $6,139.74 in economic damages to CAP.

Breach of implied warranty: Reliant impliedly warranted that the paint lines locating the underground gas lines were applied in a workmanlike quality at 22 Indian Springs Road.

Indemnification: In the event that CAP is held liable to Columbia Gas, Reliant is liable in full to CAP for indemnification.

Contribution: In the event that CAP is held liable to Columbia Gas, Reliant is liable to CAP for contribution.

On February 22, 2005, Reliant filed an answer to the third-party complaint filed by CAP.

## II.  Summary of Motions for Summary Judgment

### A.  Columbia's Motion for Summary Judgment against CAP on CAP's Counterclaim

{¶ 4} On June 2, 2005, Columbia filed a motion for partial summary judgment moving the court to grant judgment in favor of Columbia and against CAP on CAP's counterclaim against Columbia, arguing that:

Regarding the negligence claim: CAP's claim of negligence fails because it asserts a claim for economic damages only. It does not assert a claim for personal injury or property damage and therefore Ohio's economic loss rule precludes recovery of economic damages. Further, there existed no privity of contract between CAP and Columbia.

Regarding the breach-of-implied-warranty claim: CAP's claim of breach of implied warranty fails because there is no sale, no contract, and no product liability claim. Breach of implied warranty is a claim which sounds in tort. Therefore, as breach of implied warranty is a tort claim, Ohio's economic loss rule precludes CAP from recovery of economic damages as there is no claim for personal injury or property damage.

On July 28, 2005, Columbia filed a reply memorandum in support of its motion for partial summary judgment against CAP. Columbia reiterates its argument that the economic loss rule precludes CAP's recovery of pure economic damages and further argues that the legislative intent of R.C. 153.64 was not to affect the existing rights between contractors, public authorities, and owners of underground facilities. This legislative intent is specifically noted in divisions (C) and (E) of R.C. 153.64. Columbia also argued that when courts have allowed breach of implied warranty claims for purely economic damages it has been in the case of suppliers and products. Columbia was not a supplier and did not provide a product, and therefore there exists no precedent for an implied-warranty claim in this case.

**B. Reliant's Motion for Summary Judgment against CAP on CAP's Third Party Complaint**

{¶ 5} On June 16, 2005, Reliant filed a motion for summary judgment moving the court to grant judgment in favor of Reliant and against CAP on CAP's third-party complaint against Reliant, arguing that:

Regarding the negligence, indemnification, and contribution claims: CAP's claims of negligence, indemnification and contribution fail because they assert a claim for economic damages only and Ohio law precludes recovery in tort for purely economic losses. The alleged loss did not derive from physical harm suffered by CAP or from any privity of contract with Reliant.

Regarding the breach-of-implied-warranty claim: CAP's claim of breach of implied warranty fails because it is not based in contract, equity, sales or product liability. The economic loss rule precludes recovery for CAP's breach-of-implied-warranty claim as it also sounds in tort.

On July 21, 2005 Reliant filed a reply brief in support of its motion for summary judgment arguing that CAP can not seek indemnification or contribution for any amount it is required to pay Columbia for the Doren or Elm lines since it addressed only the Indian Springs line in its third-party complaint against Reliant. Reliant reiterates its argument regarding the economic loss rule stated above. Finally, Reliant argues that if the court determines that the economic loss rule does not preclude CAP's third-party claims against Reliant, CAP's claims still fails as a matter of law because CAP had actual notice of the location of the gas line before damaging it. Therefore, pursuant to R.C. 153.64(D), CAP may be held liable for damages to the line.

**C. CAP's Memorandum Opposing Columbia's and Reliant's Motions for Summary Judgment**

{¶ 6} On June 24, 2005, CAP filed a memorandum opposing Columbia's motion for partial summary judgment and Reliant's motion for summary judgment, arguing that:

Regarding the negligence, indemnification, and contribution claims: CAP's claims of negligence, indemnification, and contribution succeed because purely economic losses may be recovered in a tort action where privity or a sufficient nexus to substitute for privity is established. A sufficient nexus is established by R.C. 153.64(C), as CAP is a member of limited class whose reliance upon Columbia and Reliant was specifically foreseen.

Regarding the breach-of-implied-warranty claim: CAP's claim of breach of implied warranty succeeds because Columbia and Reliant were statutorily obligated to fulfill obligations under R.C. 153.64(C) and as such impliedly

warranted that the paint lines were applied in a workmanlike quality and properly identified the course and location of the grounds.

### D. CAP's Motion for Summary Judgment against Columbia on Columbia's Complaint

{¶ 7} On June 24, 2005, CAP filed a motion for partial summary judgment moving the court to grant judgment in favor of CAP and against Columbia on Columbia's complaint against CAP, arguing that:

Regarding the first (Doren Avenue) and third (Indian Springs Road) negligence claims: CAP contacted OUPS and Columbia in compliance with R.C. 153.64(C), and therefore, pursuant to division (D) of R.C. 153.64, CAP is relieved of liability for damaging a utility line. Division (D) states: "Any contractor or its subcontractor who complies with the requirements of division (C) of this section shall not be responsible to the owner of the underground utility facility if underground utility lines are encountered not as marked in accordance with the provisions of division (C) of this section by the owner of the underground utility facility, unless the contractor or its subcontractor has actual notice of the underground utility facility." CAP argues that as Columbia and Reliant failed to mark the depth of the Doren Avenue and Indian Springs Road lines, Columbia waived its right to recover damages against CAP for striking those lines.

On August 11, 2005, CAP filed a reply in support of its motion for summary judgment against Columbia on Columbia's complaint against CAP. CAP argues that with regard to Doren Avenue its argument is based on Columbia's failure to mark the depth of the gas lines, not the course of the gas lines. CAP argues that its motion for summary judgment does not involve the Elm Street line. CAP argues that with regards to Indian Springs Road the gas line was not exposed or visible and CAP's first contact with the Indian Springs line occurred as CAP hit and damaged the line and therefore it did not have actual notice. Finally, CAP argues that depth is a basis for liability and the absence of a depth designation results in Columbia waiving its right to recover damages against CAP for striking those lines.

### E. Columbia's Memorandum Opposing CAP's Motion for Summary Judgment

{¶ 8} On July 28, 2005, Columbia filed a memorandum in opposition to CAP's motion for partial summary judgment, arguing that:

Regarding Doren Avenue: CAP does not specifically assert in its brief or affidavit that Columbia mismarked the course of its gas line and therefore the court must assume that Columbia's marks were correct.

Regarding Elm Street: CAP failed to call OUPS prior to excavating thereby violating R.C. 153.64(C).

Regarding Indian Springs Road: the gas line had previously been exposed and was visible at the time CAP damaged it. Therefore CAP had actual notice and pursuant to R.C. 153.64(D) CAP is liable for the damages it caused by striking the gas line.

Regarding Doren Avenue and Indian Springs Road: R.C. 153.64(C) requires a utility to mark the approximate depth at which utility lines were installed. CAP did not assert that Columbia failed to indicate approximate installed depth—which may differ from the current depth. Further, notification for depth is always an estimate.

On August 17, 2005, Columbia filed a surreply to CAP, arguing that there is a question of fact as to whether CAP, a corporation, had actual notice of the location of Columbia's lines.

### III. Standard for Motions for Summary Judgment

{¶ 9} Civ.R. 56(C) provides:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

{¶ 10} A motion for summary judgment may be granted only when the moving party has demonstrated:

"(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor."

*Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

### IV. Issues before the Court

#### A. Does Ohio's Economic Loss Rule Preclude CAP's Negligence, Indemnification, and Contribution Claims for Economic Damages?

1. General Definition of Economic Loss Rule

{¶ 11} Columbia argues that because CAP is asserting economic damages (downtime damages) only, and the damages did not derive from any physical harm or injury to property or from any privity of contract with Columbia, CAP is

precluded from recovery pursuant to Ohio's economic loss rule. Ohio's economic loss rule states in general that "in order to recover indirect economic damages in a negligence action, the plaintiff must prove that the indirect economic damages arose from tangible physical injury to persons or from tangible property damage. Indirect economic damages that do not arise from tangible physical injury to persons or from tangible property damage may only be recovered in contract." *Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.* (1995), 73 Ohio St.3d 609, 653 N.E.2d 661.

2. Exception to Economic Loss Rule: Is There a Sufficient Nexus to Create a Substitute for Privity?

{¶ 12} CAP argues that courts have created an exception to the economic loss rule when a sufficient nexus exists to create a substitute for privity. In support of its argument, CAP points to *E. Ohio Gas Co. v. Kenmore Constr. Co.* (March 28, 2001), 9th Dist. Nos. 19567 and 19790, 2001 WL 302818. The *E. Ohio* court found the *Queen City* rule inapplicable and stated that "where privity of contract or its substitute exist, purely economic losses may be recovered in a tort action." Id., citing *Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp. Assn.* (1990), 54 Ohio St.3d 1, 560 N.E.2d 206, and *United Tel. Co. of Ohio v. Williams Excavating, Inc.* (1997), 125 Ohio App.3d 135, 707 N.E.2d 1188.

a. *Haddon View's* Sufficient Nexus

{¶ 13} In finding the *Queen City* economic loss rule inapplicable, the *E. Ohio* court relied on the court's finding in *United Tel. Co. of Ohio v. Williams Excavating, Inc.* (1997), 125 Ohio App.3d 135, 707 N.E.2d 1188. The *United Tel.* court relied on the Ohio Supreme Court's ruling in *Haddon View Invest. Co. v. Coopers & Lybrand* (1982), 70 Ohio St.2d 154, 24 O.O.3d 268, 436 N.E.2d 212. In *Haddon View*, the Supreme Court held that recovery of economic damages only would be permitted by a foreseen plaintiff, or one who is a member of a limited class whose reliance is specifically foreseen, even where strict privity did not exist. With this in mind, the Supreme Court found that limited partners constituted a limited class of investors whose reliance on an accountant's certified auditors for purposes of investment strategy was specifically foreseen by a defendant accounting firm and therefore the limited partners could bring a negligence suit against the accounting firm for economic damages only. This court will note that the fact pattern and the parties in *Haddon View* are dissimilar to the case at bar. *Haddon View* involved limited partners suing an accountant, and this case involves a contractor suing the owner of underground utility facilities and its locator.

### b. *E. Ohio*'s Sufficient Nexus

{¶ 14} In *E. Ohio,* a case with a fact pattern and parties very similar to the case at bar, Kenmore, the contractor, set forth three theories to show that a sufficient nexus existed: (1) a sufficient nexus is created by R.C. 153.64 and R.C. 3781.29, which establish a mandatory statutory duty for a utility owner to mark the location of its underground utility facilities within 48 hours after it receives notice from the contractor that construction operations will begin in the area, (2) a sufficient nexus is created because the trial court found that Kenmore is a third-party beneficiary of the locating contracts between the utility and its locator, and (3) a sufficient nexus is established because the utility exercised direct control and supervision over the locating of its underground utility facilities. *E. Ohio.* The Ninth District Court of Appeals in *E. Ohio* found that East Ohio did not present any evidence to refute Kenmore's claim that a sufficient nexus to substitute for privity of contract existed and therefore the court determined that summary judgment was not appropriately granted. This court does not find the *E. Ohio* finding to be persuasive for reasons more fully developed below.

### c. Rejection of *Haddon View*'s Sufficient Nexus

{¶ 15} In discussing the possibility that a substitute for privity could exist, the *E. Ohio* court referred to the Ohio Supreme Court decision in *Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp.* (1990), 54 Ohio St.3d 1, 560 N.E.2d 206. In *Floor Craft,* the Supreme Court found that tort liability may not be imposed for purely economic damages when a contractor sues an architect in the absence of privity of contract between the parties. Floor Craft, the contractor, sued an architect to recover economic damages caused by a defect in flooring. The Supreme Court determined that Floor Craft could not sue the architect for economic injury due to allegedly defective plans and specifications in the absence of direct contractual relationship between contractor and architect or sufficient nexus that could serve as a substitute for contractual privity. Id. The Supreme Court found that *Haddon View* was not dispositive of the issue and that although architects may foresee that certain contractors will contribute to a construction project, the architect's services are generally extended to an unresolved class of persons unfixed in number. Similarly, this court finds that although Columbia Gas and Reliant may have foreseen that CAP would excavate in the area of Columbia's underground utility facilities, the locating of such facilities may extend to an unresolved class of persons unfixed in number, including other contractors awaiting completion of CAP's work to commence their work, businesses in the area which closed for business due to damage to gas lines, or homeowners in the area inconvenienced due to damage to gas lines.

### d. Rejection of *E. Ohio*'s Sufficient Nexus

{¶ 16} The Sixth District Court of Appeals, in *Columbia Gas of Ohio, Inc. v. Crestline Paving & Excavating Co., Inc.*, 6th Dist. No. 6–02–1093, 2003-Ohio-793, 2003 WL 397830, determined that R.C. 153.64 does not provide a sufficient privity substitute to deflate the economic loss rule. The *Crestline* court focused in particular on R.C. 153.64(D), which states, "Except as noted in this division, this section does not affect rights between the contractor and its subcontractor and the owner of the underground utility facility for failure to mark or erroneously marking utility lines." The court reasoned that since the economic loss rule was part of Ohio's common law decades before the enactment of R.C. 153.64, it is part of the rights the statute specifically states are unaffected by the law. The *Crestline* court further rejects the theory that direct control and supervision establish a substitute for privity. In doing so, it relied on the Supreme Court's determination that " '[t]here is no need for the court to revisit, clarify, or define the parameters of *Floor Craft* at this time. It is sufficient to note that there is no such thing as a course of action for excessive control.' " Id., quoting *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.* (1997), 78 Ohio St.3d 353, 678 N.E.2d 519. Thus, the *Crestline* court rejected two of the three theories Kenmore put forth in the *E. Ohio* case. This court finds the reasoning in *Crestline* to be sound.

### 3. Legislative Intent of R.C. 153.64

{¶ 17} This court agrees with the Sixth District Court of Appeals' analysis of the legislative intent behind R.C. 153.64. In addition to the excerpt cited in *Crestline*, several other excerpts from R.C. 153.64 lead this court to believe that the Ohio General Assembly did not intend for the statute to serve as a substitute for privity. The excerpt highlighted in *Crestline* expressly states that R.C. 153.64(D) does not affect rights between contractors and owners of underground facilities, and it is immediately followed by text prohibiting the public authority with whom a contractor contracts from changing responsibilities between public authority and the owners of underground utility facilities "in connection with damage, injury, or loss to any property in connection with underground utility facilities." Such language demonstrates a legislative intent not to impose additional responsibility for damages on the owner of underground utility facilities. The court also notes that R.C. 153.64(D) specifically authorizes a contractor to increase the price of a contract with a public authority for "additional time that will be required" in the event the public authority fails to comply with its requirements under division (B) of the same section. The statute is conspicuously silent, however, in not affording the same leeway to a contractor in the event a public utility or its locator does not comply with its requirements under division (C) of the same section.

4. The Economic Loss Rule does Preclude Recovery of Purely Economic Damages

{¶ 18} Therefore, based upon the foregoing analysis, the court concludes that Ohio's economic loss rule does preclude CAP's recovery of purely economic damages on its claim of negligence against Columbia and on its claims of negligence, indemnification, and contribution against Reliant. Therefore, the court grants Columbia's motion for summary judgment against CAP on CAP's counterclaim as to the negligence issue, and the court grants Reliant's motion for summary judgment against CAP on CAP's third-party complaint as to the negligence, indemnification, and contribution issues.

**B. Does Ohio's Economic Loss Rule Preclude CAP's Breach–of–Implied–Warranty Claims for Economic Damages?**

{¶ 19} CAP argues that by marking the location of the underground gas lines, Columbia and Reliant have breached an implied warranty of workmanlike quality. Breach of implied warranty of workmanlike quality sounds in tort. *Barton v. Ellis* (1986), 34 Ohio App.3d 251, 518 N.E.2d 18. Therefore, the question becomes whether the economic loss rule precludes CAP's claims for breach of implied warranty of workmanlike quality. In support of its argument that the economic loss rule does not preclude CAP's recovery for breach of an implied warranty, CAP cites *LaPuma v. Collinwood* (1996), 75 Ohio St.3d 64, 661 N.E.2d 714. In *LaPuma,* the Supreme Court considered whether Ohio's product liability statute preempted plaintiff's claim against a concrete supplier for breach of implied warranty of workmanlike quality. In determining that the claim was not a product liability claim and therefore the product liability statutes did not preempt their cause of action, the Supreme Court considered R.C. 2307.72(C), which states:

> Any recovery of compensatory damages for economic loss based on a claim that is asserted in a civil action, other than a product liability claim, is not subject to sections 2307.71 to 2307.79 of the Revised Code, but may occur under the common law of this state or other applicable sections of the Revised Code.

Based upon its understanding of R.C. 2307.72(C), the Supreme Court concluded that a cause of action concerning a product that alleges only economic damages may pursue a common law claim including breach of implied warranty. This court will note two things that distinguish *LaPuma* from the case at bar. First, with R.C. 2307.72(C) the General Assembly expressly acknowledges a common law claim for economic loss only concerning products. In contrast, R.C. 153.64 in no way acknowledges such a common law claim. Second, *LaPuma* concerns a product. The case at bar does not concern products.

{¶ 20} Second, this court will note that *LaPuma* relies heavily on *Iacono v. Anderson Concrete Corp.* (1975), 42 Ohio St.2d 88, 71 O.O.2d 66, 326 N.E.2d 267. Careful review of the *Iacono* case reveals that a defective product caused property damage. The *Iacono* case relies heavily on *Lonzrick v. Republic Steel Corp.* (1966), 6 Ohio St.2d 227, 35 O.O.2d 404, 218 N.E.2d 185. Careful review of the *Lonzrick* case reveals that a defective product caused personal injury. Neither property damage nor personal injury are at issue in the case at bar. Therefore, not only is *LaPuma* distinguishable from the case at bar, but *Iacono* and *Lonzrick* are as well.

{¶ 21} Finally, in support of its argument, CAP points to *Corporex Dev. & Constr. Mgt. Inc. v. Shook, Inc.*, 10th Dist. No. 03AP–269, 2004-Ohio-2715, 2004 WL 1172877, reversed, 106 Ohio St.3d 412, 2005-Ohio-5409, 835 N.E.2d 701. The Tenth District distinguished the facts in *Corporex* from the facts in *Floor Craft* in three ways: (1) *Corporex* involved an owner and subcontractor, whereas *Floor Craft* involved subcontractor and architect; (2) *Corporex* had a resolved, fixed set of persons, whereas *Floor Craft* had an unresolved class of persons unfixed in number; and (3) *Corporex* had direct interaction between owner and subcontractor, whereas *Floor Craft* had no direct interaction. The case at bar can be distinguished from *Corporex* as well.

{¶ 22} This case involves a contractor and owner of underground utilities and a contractor and an underground utility locator, not an owner and a subcontractor. Further, as previously addressed, this case involves an unresolved class of persons unfixed in number, not a fixed set of persons. Finally, although R.C. 153.64 requires the contractor to notify the owner of the underground utility facility, the underground utility facility is only required "to stake, mark or otherwise designate the location of the underground utility facilities" and is not required to directly interact with the contractor. In addition, no evidence has been presented that there was direct interaction with the contractor. Thus, *Corporex* is distinguishable from the case at bar.

{¶ 23} This court concludes that Ohio's economic loss rule precludes CAP's breach-of-implied-warranty claims for purely economic damages and therefore grants Columbia's motion for partial summary judgment against CAP on CAP's counterclaim as to this issue as well as Reliant's motion for summary judgment against CAP on CAP's third-party complaint.

**C. Did CAP Comply with R.C. 153.64(C) and if so, pursuant to R.C. 153.64(D) is CAP Exempt from Responsibility for Damages to the Line?**

{¶ 24} R.C. 153.64(D) reads, "[A]ny contractor * * * who complies with the requirements of division (C) of this action shall not be responsible to the

owner of the underground utility facility if underground utility lines are encountered not as marked in accordance with Division (C) of this section by the owner of the underground facility, unless the contractor or its subcontractor has actual notice of the underground utility facility." CAP argues that pursuant to this division, it is exempt from responsibility for damages to the gas line as Columbia has claimed on its complaint.

{¶ 25} Several issues arise in examining R.C. 153.64(D). First, the court must examine whether CAP complied with the requirements of division (C). Second, the court must determine whether the lines were encountered not as marked in accordance with division (C). Third, if the court determines that CAP complied with the requirements of division (C) and that the lines were encountered not as marked in accordance with division (C), then the court must determine whether the contractor had actual notice of the underground utility facility.

{¶ 26} The court determines, based upon the evidence presented thus far, that genuine issues of material fact remain as to these issues and therefore denies CAP's motion for summary judgment against Columbia on Columbia's complaint.

## V. Conclusion

{¶ 27} Based on the foregoing, the court grants Columbia's motion for partial summary judgment against CAP on CAP's counterclaim as to CAP's claims of negligence and breach of implied warranty. Therefore, the court dismisses CAP's counterclaim against Columbia. Further, the court grants Reliant's motion for summary judgment against CAP on CAP's third-party complaint as to the negligence, indemnification, contribution, and breach-of-implied-warranty claims. Therefore, the court dismisses CAP's third-party complaint against Reliant. Finally, the court denies CAP's motion for summary judgment against Columbia on Columbia's complaint and sets the complaint for pretrial on January 19, 2006, at 9:00 a.m.

{¶ 28} The above order does not constitute a final, appealable order within the meaning of Civ.R. 54(A).

So ordered.