OPINION
{¶ 1} Plaintiffs-appellants, Pascal and Caryl Mahvi, appeal the judgment of the Geauga County Court of Common Pleas, granting summary judgment in favor of defendant-appellee, Republic Powdered Metals, Inc. ("RPM"). We affirm the decision of the trial court.
 {¶ 2} In July 1998, appellants purchased a residence ("the home") located at 14611 Shire Court, in Novelty, Ohio, from Elizabeth DeRue, for approximately $700,000. The home was equipped with an Exterior Insulation Finishing System ("EIFS"), a synthetic stucco exterior barrier system. An EIFS generally consists of a substrate made from either plywood and or other materials, such as gypsum board, which are glued together with polystyrene insulation boards, known as EPS boards. This substrate is then followed by a base coat generally consisting of sand, quartz or marble dust, combined with synthetic bonding agents and/or resins, over which fiberglass netting is embedded. Generally, a primer coat is then applied, followed by an acrylic-based exterior finish coat, which is available in a variety of colors.
 {¶ 3} EIFS systems and their respective components are produced by a variety of different manufacturers and have been used in commercial and residential applications since approximately 1975. Over the ensuing years, a variety of modifications and improvements have been made to EIFS systems. The most significant improvement to EIFS systems during this period is the water management system, which was designed to protect the interior framing of a structure from moisture retention and water incursion. The Mahvi home was not equipped with a water management system, although it is unclear from the record whether water management systems were generally available when the home was constructed sometime in the mid to late 1980's.
 {¶ 4} In the summer of 2001, the Mahvis decided to build an addition, including a mother-in-law suite, to the home. Pursuant to this plan, Mr. Mahvi brought Bob Bendes in as foreman for the project. Bendes was responsible for the hiring and supervision of all workers involved on the project. On or about August 2001, Bendes contacted All Seasons Stucco, which is in the business of installing EIFS systems, for the purpose of receiving an estimate for the addition. After the bid was accepted, Mark Sturm, owner of All Seasons Stucco, began work.
 {¶ 5} During construction of the addition, workers discovered that there were problems with the existing EIFS system on the home. There is some disagreement as to when the problems were discovered, and by whom. Mr. Mahvi claimed in his deposition that the problem was discovered when workers removed part of the original EIFS system when framing the addition. Sturm testified in his deposition that he inspected the existing exterior and discovered that the EIFS system was experiencing separation between the EPS board and the exterior gypsum coatings, which Sturm brought to the attention of Bendes. Both Sturm and appellants agree that water leakage had caused problems with the integrity of the EIFS system on the home, although the actual nature and extent of the actual damage remains uncertain, since repairs have not yet been made.
 {¶ 6} On March 20, 2003, appellants filed a claim in the Geauga County Common Pleas Court against multiple defendants, including RPM, under various theories of liability. On July 16, 2003, the trial court dismissed appellants' claims against all parties for violations of Ohio's Consumer Sales Practices Act and "punitive damages." With leave of court, appellants filed an amended complaint on October 21, 2003. With regard to RPM, appellants alleged claims for breach of express warranty, fraud, negligence, product liability, and breach of implied warranty.
 {¶ 7} On August 16, 2004, RPM filed a motion for summary judgment. On September 2, 2004, appellants filed their brief in response. In their brief, appellants conceded that RPM was entitled to judgment as a matter of law with respect to the breach of express warranty, fraud, and product liability claims, but contested RPM's motion with respect to the breach of implied warranty and negligence claims.
 {¶ 8} On November 15, 2004, the trial court filed its judgment entry pursuant to Civ.R. 54(B), and granted summary judgment in favor of RPM on appellants' remaining claims. The trial court found appellants' claim for breach of implied warranty in tort failed, since there was "no reliable, probative evidence in support of the breach of implied warranty claims." The court concluded that appellants did not introduce any evidence affirmatively linking RPM's product to the allegedly defective EIFS, and that appellants did not submit "any reliable, probative evidence" that any product connected to RPM was "defectively manufactured or designed."
 {¶ 9} With respect to appellants' negligence claim, the court determined that "[p]laintiffs have not provided this Court with any evidence that [RPM] committed any negligent acts." The court noted that "[c]onclusory statements that there must have been something wrong [with RPM's product] because the residence is obviously damaged do not rise to the level of reliable probative evidence" of a negligence claim.
 {¶ 10} Appellants timely appealed, asserting a single assignment of error:
 {¶ 11} "The trial court erred in granting the Motion for Summary Judgment of Defendant, Republic Powdered Metals."
 {¶ 12} "Summary judgment is a procedural device to terminate litigation and to avoid formal trial when there is nothing to try. It must be awarded with caution." Murphy v. Reynoldsburg
(1992), 65 Ohio St.3d 356, 358-9. Summary judgment is proper when three conditions are satisfied: 1) there is no genuine issue of material fact; 2) the moving party is entitled to judgment as a matter of law; and 3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Harless v. WillisDay Warehousing Co. (1976), 54 Ohio St.2d 64, 66; Civ.R. 56(C).
 {¶ 13} In reviewing a motion for summary judgment, the court must construe the evidence in the light most favorable to the nonmoving party. Doe v. Shaffer, 90 Ohio St.3d 388, 390,2000-Ohio-186. Moreover, an appellate court conducts a de novo review of the trial court's decision to grant summary judgment. Id.
 {¶ 14} Under Civ.R. 56(C), "the moving party bears the initial responsibility of informing the trial court for the basis of the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of material fact on a material element of the nonmoving party's claim." Drescher v. Burt, 75 Ohio St.3d 280, 292,1996-Ohio-107 (citation omitted). Facts that are material are those relevant to the substantive law applicable in a particular case. Needham v. Provident Bank (1996), 110 Ohio App.3d 817,826, citing Anderson v. Liberty Lobby, Inc. (1986),477 U.S. 242, 248.
 {¶ 15} "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R.56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Dresher, 75 Ohio St.3d at 293.
 {¶ 16} Appellants make two arguments in support of their assigned error. Appellants assert that summary judgment was inappropriate since there is a genuine issue of material fact as to whether RPM produced the exterior materials on the house. Appellants also argue that the court erred in granting RPM summary judgment on their product liability (breach of implied warranty in tort) claim, since RPM failed to put any evidence in the record that its product was not defective. We find these arguments unconvincing.
 {¶ 17} Strict liability in tort and breach of implied warranty are considered "virtually indistinguishable" causes of action. Temple v. Wean United, Inc. 50 Ohio St.2d 317, 320
(citations omitted). Thus, in order to recover based on either theory, a plaintiff must prove that "(1) There was, in fact, a defect in the product manufactured and sold by the defendant; (2) such defect existed at the time the product left the hands of the defendant; and (3) the defect was the direct and proximate cause of the plaintiff's injury or loss." Id. at 321, citing StateAuto Mutual Ins. Co. v. Chrysler Corp. (1973),36 Ohio St.2d 151, 156. A defect is said to exist when a product is "not of good and merchantable quality, fit and safe for its ordinary intended use." Id, citing Lonzrick v. Republic Steel (1966),6 Ohio St.2d 227, 235.
 {¶ 18} In its motion for summary judgment, RPM cited to the several items of evidence to show that there were no genuine issues of material fact, and they were entitled to judgment as a matter of law. These evidentiary items included the affidavit and report of Gary Zwayer, RPM's expert witness. Zwayer's report was based on his inspection of the home, and cited to the reports of Ronald Wright, appellants' expert witness. Wright, who had not visited the home, in turn, relied on the report of Richard Kraly, an architect retained by appellants' homeowner's insurance company. Both the Wright report and the Kraly report identified the manufacturer of the EIFS system as Parex. In addition to Zwayer's report, RPM's motion for summary judgment relied on appellants' answers to interrogatories, and the deposition testimony of appellants.
 {¶ 19} After inspection of the home, Zwayer concluded that "[t]he leakage and subsequent damage to the Mahvi residence was not the result of any defect in design and manufacture of the EIFS or its materials. The leakage and subsequent damage is the result of the lack of proper roof edge termination, leaking windows and the contractor's failure to construct the exterior walls in accordance with the manufacturer's typical instructions and details and the Architect's details. The fact that the exterior cladding material is EIFS is immaterial to causes of the leakage and the resulting damage. It is our opinion that, if the residence had been clad with a stucco system, which is a water management system as recommended by [the Wright Report] that was not available as an EIFS system in 1988, and the contractor had utilized the same lack of diligence to proper construction, the damage to the sheathing and framing would likely have been greater."
 {¶ 20} RPM also used the Wright report to support its motion for summary judgment. The report, which was supported by affidavit, produced on behalf of the defendant, and provided to RPM during the course of discovery, asserted that "[t]he barrier EIFS design concept by Parex is inherently flawed and does not perform as intended."
 {¶ 21} The report went on to explain that "[i]nstallation deficiencies increased avenues through which water intrusion occurred that seriously aggravated and accelerated damages to building components behind the EIFS. However, Parex designed the installation details and methods that were prone to fail and provided inadequate training to applicators for the installation of the barrier EIFS that contributed to the installation deficiencies. Installation deficiencies reported at the Mahvi residence were types of deficiencies commonly found on residences with barrier EIFS claddings."
 {¶ 22} The Kraly report, which was also used in support of RPM's motion for summary judgment, concluded, in relevant part, that "[d]eterioration of the EIFS installation at the residence located at 14611 Shore Court — Novelty, Ohio 44072, occurred over an extended period of time and exhibited signs that the problems that developed at [sic] are part of the comprehensive list * * * including: 1) Cracking; 2) Inadequate Closure; and 3) SystemDetachment. As described in this report and attached publications, some of the problems are attributed to installation errors, lack of required materials and maintenance issues, all of which resulted in an excessive amount of destructive moisture within the components."
 {¶ 23} Taken together, these reports uniformly conclude that installation deficiencies and poor maintenance were the cause of the damage to appellants' home, rather than any inherent defect to the product. On the basis of this evidence, RPM shifted the burden to appellants to show that there was a genuine issue of material fact on each element of their products liability claim, by demonstrating that there was no connection between the damages suffered by appellants and the failure of an RPM product. Appellants acknowledged as much in their brief in response to RPM's motion for summary judgment.
 {¶ 24} With the burden shifted, appellants had a responsibility under Civ.R. 56(E) "to set forth specific facts showing that there is a genuine issue for trial, and if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Dresher,75 Ohio St.3d at 293.
 {¶ 25} In responding, appellants cited to the deposition of Mr. Mahvi to attempt to demonstrate a genuine issue of material fact by implying that RPM produced the exterior materials used on the house. Appellants relied solely on answers given by Mr. Mahvi in his deposition relating to approximately twenty buckets of material that were found in the basement of the home. Mr. Mahvi testified that the prior owner of the home, Mrs. DeRue, left explanatory notes around the house placed on various items. Included among the notes left by Mrs. DeRue was one attached to the aforementioned buckets which read "[t]his is the material for the exterior." On the buckets was the name "Republic Powdered Metals." Mr. Mahvi testified that he did not open the buckets himself, but that one was opened by Sturm, who subsequently told him that the material in the buckets was the material used on the outside of the house.
 {¶ 26} Appellants maintain that the facts Mr. Mahvi alleged in his deposition, while they did "not conclusively prove that RPM is the product manufacturer of the exterior cladding on plaintiffs' home" shift the burden back to RPM, since RPM has not "definitively proved that their materials were not used on the exterior of the home." We disagree.
 {¶ 27} In determining whether a genuine issue of material fact exists, the court must "ask itself whether a fair minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence upon which the jury could reasonably find for the plaintiff." Carsey v. Alexander Cemetery, 4th Dist. No. 00CA028, 2001-Ohio-2438, 2001 Ohio App. LEXIS, at *8 (citation omitted).
 {¶ 28} In this case, the evidence cited by appellants was circumstantial, that is, it merely created an inference that the RPM material may have been used as the exterior finish coating on the home when it was built. However, "[f]or the purpose of supporting a proposition, it is not permissible to draw an inference from a deduction which is itself purely speculative and unsupported by an established fact. Hurt v. Charles J. RogersTransp. Co. (1955), 164 Ohio St. 329, 332. In other words, "[a]n inference can not be based upon evidence that is too uncertain or speculative, or which raises merely a conjecture or possibility."Bragg v. Swann Super Cleaners, Inc. (Mar. 26, 1981), 10th Dist. No. 80AP-840, 1981 Ohio App. LEXIS 12857, at *6 (citation omitted).
 {¶ 29} We also note, in reviewing Mahvi's deposition, that both statements Mahvi relies upon as evidence to support his motion in opposition are hearsay, since they are based solely upon DeRue's note and Sturm's statement that the RPM material looked like the material on the outside of the house.
 {¶ 30} Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Unless it is subject to a recognized exception, hearsay evidence is ordinarily not allowed in opposing a properly supported motion for summary judgment to shift the burden of proof. Harmon v. Schroeder (Dec. 17, 1986), 3rd Dist. No. 4-85-17, 1986 Ohio App. LEXIS 9391, at *6 (plaintiff was not allowed to use deposition testimony to provide proof of an element of the case, when the testimony was simply relaying hearsay statements of others); Cf. Civ.R. 56(E) ("affidavits * * * shall set forth such facts as would be admissible in evidence);Orlando v. Powertrain Div., General Motors Corp. (Aug.6, 1999), 6th Dist. No. L-99-1037, 1999 Ohio App. LEXIS 3579, at *9 (affidavits and deposition testimony containing "hearsay and speculation" cannot be considered by the trial court or the appellate court).
 {¶ 31} Even if we were to conclude that appellants raised a genuine issue of material fact as to whether RPM's product was used as the finish coat on the original EIFS system, appellants' entire product liability would nevertheless fail, as a matter of law. Appellants offer no evidence whatsoever that the RPM product itself was defective, that the defect existed at the time the RPM product left the hands of the defendant, or that the alleged defect in the RPM product was the direct and proximate cause of the plaintiff's injury or loss. It is axiomatic when defending against a properly made and supported motion for summary judgment that a nonmoving party must produce evidence on any issue for which that party bears the burden of production at trial. Wingv. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, 111; Celotex, supra, 477 U.S. at 322-323, 106 S.Ct. at 2552,91 L.Ed.2d at 272. Since appellant offered no evidence related to the aforementioned elements, and failed to establish any connection between RPM and Parex, the trial court's grant of summary judgment was appropriate. See Williams v. 312 WalnutLimited Partnership (Dec. 31, 1996), 1st Dist. No. C-960368, 1996 Ohio App. LEXIS 5887, at *8, quoting Paul v. UniroyalPlastics Co. (1988), 62 Ohio App.3d 277, 282 ("[t]he non-moving party may not rely on isolated facts to support its claim. Rather, he must show the evidence as a whole substantiates his claim.")
 {¶ 32} Appellants' argument that RPM was required to produce evidence that their product was not defective in order to be granted summary judgment likewise fails. It is well-settled that "there is no express or implied requirement in [Civ.R. 56] that the moving party must support it's motion with affidavits or other similar materials negating the opponent's claim."Celotex Corp. v. Catrett (1986), 477 U.S. 317, 323 (emphasis sic). In other words, the defendant, in supporting his motion for summary judgment is not required to "prove a negative." Catrettv. Johns-Manville Sales Corp. (D.C. Cir. 1985), 756 F.2d 181,187 (Bork, J., dissenting).
 {¶ 33} For the foregoing reasons, appellants' sole assigned error is without merit, and we affirm the judgment of the Geauga County Court of Common Pleas. Accordingly, RPM's cross-assignment of error is rendered moot, since "cross-assignments of error may only be considered for the limited purpose of preventing reversal." Strongsville v. Terry Development Corp. 8th Dist. No. 62057, 62061, 62120, 1993 Ohio App. LEXIS 2692, at *11.
Rice, J., concurs, Ford, P.J., concurs with a Concurring Opinion.